THE AMERICAN FIRE INSURANCE COMPANY

*v.*

THE BRIGHTON COTTON MANUFACTURING COMPANY.

*Filed at Ottawa June 16, 1888.*

1. INSURANCE—*condition that premises shall not "become vacant and unoccupied"—construed.* A policy of insurance upon a cotton-factory contained a condition that if the assured "shall allow the building herein covered to become vacant and unoccupied, the policy shall become null and

void." In a suit to recover for a loss by fire, it appeared that work in the factory, in many of the departments, was in temporary suspension for purposes relating to supplies, etc. Most of the hands were discharged until work should be resumed, which was expected to be in a short time. But a number of employes were retained, and were engaged in and about their usual work in the factory, up to and on the day of the fire. All the plant and much valuable material, and some manufactured goods, were in the building. One of the proprietors was either in or at the building when the fire was discovered, and came there with money to pay persons engaged as laborers about the mill. A night and day watchman were retained, and performed their usual duties. It was *held,* the property was at no time before the fire "vacant and unoccupied," within the meaning of the policy.

2. Same—*condition that manufacturing establishment shall not cease to be operated—construed.* A policy of insurance of a manufacturing establishment contained a condition that if the establishment should cease to be operated without special agreement indorsed thereon, the insurance should cease. There was indorsed on the policy when it was delivered, "other insurance permitted without notice, and permission granted to set up and operate machinery, and to make such repairs and alterations as may be necessary to keep the premises in good order during the time of this policy, without prejudice thereto:" *Held,* that the condition and this permission were to be construed together, as constituting the contract of the parties, and when so construed it showed an understanding that there might be a temporary suspension in the operation of the mill, for the purpose of making repairs: *Held, also,* that a temporary suspension of some parts of the business, others being carried on, or a temporary suspension of all work for want of a supply of materials, was not a breach of the condition.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. R. S. WILLIAMSON, Judge, presiding.

Mr. FREDERIC ULLMAN, and Mr. ELBERT H. GARY, for the appellant:

The same rule of construction is applied to policies of insurance as to other contracts, the words to be taken in their usual sense. *Robertson* v. *French,* 4 East, 135; *Insurance Co.* v. *Foster,* 92 Ill. 336; *Sawyer* v. *Insurance Co.* 37 Wis. 518; *Potter* v. *Insurance Co.* 5 Hill, 147; *Padfield* v. *Insurance Co.* 78 Ill. 167; *Herman* v. *Insurance Co.* 85 N. Y. 171.

The words, "cease operation," apply as well to a temporary suspension as to a permanent one. *Insurance Co.* v. *Wetmore*, 32 Ill. 245; *Keith* v. *Insurance Co.* 10 Allen, 228; *Schmidt* v. *Insurance Co.* 41 Ill. 298; *La Salle* v. *Insurance Co.* 43 N. Y. 468; *Insurance Co.* v. *McDowell*, 50 Ill. 129; *Ridge* v. *Insurance Co.* 9 Lea, 207; *Worthington* v. *Bearce*, 12 Allen, 382; May on Insurance, sec. 265; Phillips on Insurance, sec. 975.

The books abound in cases where it has been held the length of time of the condition broken is not material, even though an intention to resume the original condition of things existed. In addition to the cases already referred to, the following cases are cited: *Sleeper* v. *Insurance Co.* 56 N. H. 401; 5 I. L. J. 538; *Ashworth* v. *Insurance Co.* 112 Mass. 422; *Whitney* v. *Insurance Co.* 9 Hun, 39; *Cook* v. *Insurance Co.* 70 Mo. 610; Wood on Insurance, (2d ed.) p. 211; *Alston* v. *Insurance Co.* 80 N. C. 326; *Miller* v. *Insurance Co.* 18 Phil. 551.

There is no cessation of operations, within the meaning of the policy, on Sunday. The operatives begin work on Monday when they quit on Saturday. The suspension arises from the known and universal custom of resting from labor on Sunday. When the contract was made, it was with reference to this custom. But there is a vast difference between a suspension for such a reason and "other reasons occasioned by the usual and ordinary incidents to the business." *Insurance Co.* v. *Foster*, 92 Ill. 336; *Wood* v. *Insurance Co.* 83 N. Y. 133.

As to what constitutes a cessation of operations, see *Houghton* v. *Insurance Co.* 8 Metc. 114.

It has been contended, also, that the contract, as made, is to be affected by the usage of the assured, or others engaged in a similar business, to cease operations for various reasons that may have arisen. This question is, perhaps, not pertinent to the questions involved in this court, but the following cases on the subject are cited: *Woolen Co.* v. *Insurance Co.* 22 Conn. 19, and cases there cited. See, also, *Insurance Co.* v. *O'Neile*, 13 Ill. 93; *Luce* v. *Insurance Co.* 105 Mass. 302;

*Mason* v. *Insurance Co.* Upper Canada, Q. B. 585; *Ripley* v. *Insurance Co.* 30 N. Y. 136; *Duncan* v. *Green*, 43 Iowa, 337; *Partridge* v. *Insurance Co.* 15 Wall. 133; *Woolen Co.* v. *Proctor*, 7 Cush. 417; *Insurance Co.* v. *Harmer*, 2 Ohio St. 452.

It is claimed by appellant that the insured premises, at the time of the fire, were vacant and unoccupied, within the meaning of the condition of the policy upon that subject. *Paine* v. *Insurance Co.* 5 T. & C. 619; *Keith* v. *Insurance Co.* 10 Allen, 228; *Insurance Co.* v. *Walsh*, 54 Ill. 164; *Insurance Co.* v. *Padfield*, 78 id. 167; *Ashworth* v. *Insurance Co.* 112 Mass. 422; *Reed* v. *Insurance Co.* 90 N. Y. 382; *Whitney* v. *Insurance Co.* 9 Hun, 39; *Insurance Co.* v. *Foster*, 92 Ill. 336; *Corrigan* v. *Insurance Co.* 122 Mass. 298; *Litch* v. *Insurance Co.* 136 id. 491; *Insurance Co.* v. *Meyer*, 63 Ind. 238; *Alston* v. *Insurance Co.* 80 N. C. 326; *Bennett* v. *Insurance Co.* 51 Conn. 817; 50 id. 470; *Herman* v. *Insurance Co.* 85 N. Y. 162; *Cook* v. *Insurance Co.* 70 Mo. 610; *Poor* v. *Insurance Co.* 125 Mass. 274; Wood on Insurance, 209.

Mr. EDWARD W. RUSSELL, and Mr. D. J. SCHUYLER, for the appellee:

A contract of insurance will be construed most strongly in favor of the insured. The conditions therein are construed strictly. *Hollman* v. *Insurance Co.* 32 N. Y. 405; *Westfall* v. *Insurance Co.* 2 Duer, 490; *Cropper* v. *Insurance Co.* 32 Pa. St. 351; *Insurance Co.* v. *Verdier*, 33 Mich. 138; *Insurance Co.* v. *Robinson*, 64 Ill. 268; *Insurance Co.* v. *Scammon*, 100 id. 644; *Schroeder* v. *Insurance Co.* 109 id. 157; *National Bank* v. *Insurance Co.* 95 U. S. 673.

The mill and establishment were never vacant and unoccupied, within the meaning of the condition. Delays and interruptions in the business, involving a temporary discontinuance of the active use of the mill, will not make the mill vacant and unoccupied. *Whitney* v. *Insurance Co.* 72 N. Y. 120; *Lead*

*Works* v. *Insurance Co.* 2 Fed. Rep. 479 ; *Stephlanki* v. *Insurance Co.* 43 Mich. 373 ; *Dennison* v. *Insurance Co.* 52 Iowa, 457.

A mere temporary suspension of business, for the purpose of repairing or for want of a supply of materials, is clearly not ceasing to operate the establishment, within the meaning of the policy. *Poss* v. *Insurance Co.* 7 Lea, 704.

When the appellant took the risk, it knew that the property was a cotton-mill; that various emergencies were likely to arise when the mill would have to be closed ; that cotton might become scarce or so high in price as to call for a suspension for a while; that the machinery was liable to wear out, and require repairing; that strikes might arise, and help might become scarce, or wages exorbitantly high. *Assurance Co.* v. *Mason,* 5 Bradw. 141; *Gamwell* v. *Insurance Co.* 12 Cush. 167 ; *Insurance Co.* v. *Foster,* 90 Ill. 121 ; *Insurance Co.* v. *Scammon,* 100 id. 644; *Insurance Co.* v. *Cormick,* 24 id. 455 ; 1 Wood on Insurance, (2d ed.) p. 154; *Grant* v. *Insurance Co.* 5 Hill, 10 ; *Billings* v. *Insurance Co.* 20 Conn. 139 ; *Townsend* v. *Insurance Co.* 18 N. Y. 168; *Insurance Co.* v. *Insurance Co.* 1 Handy, (Ohio,) 181.

At the time the policy in question was issued, express permission was granted to the plaintiffs to make all necessary repairs and requisite alterations. But whether this would extend to the plaintiff's lessee is immaterial, for the reason that this privilege is presumed to have been contemplated by the underwriter when the policy was written. *Whitney* v. *Insurance Co.* 72 N. Y. 117 ; *Townsend* v. *Insurance Co.* 18 id. 168 ; May on Insurance, (2d ed.) sec. 230, p. 281.

Mr. JUSTICE SCOTT delivered the opinion of the Court :

In the policy upon which this suit was brought, division 3, entitled "prohibitions and conditions under which this policy becomes null and void," contains provisions which it is alleged assured has suffered to be violated, and hence the insurance

contract has ceased to be obligatory upon the company. It is on the alleged violations of these provisions of the contract defendant bases its defense.

Concerning many of the principal facts no controversy exists. The property covered by the policy is a four-story and basement brick cotton-mill building, and the usual plant necessary to running such a mill. After the policy was written, plaintiff leased the mill to certain parties, who continued to operate and control it until its destruction by fire, on the 16th of July, 1885. Such leasing was made by the consent of the company, and no complaint is made on that ground. The lessees had operated the mill, under the lease, up to July 8, just before the destruction of the property. On that day most of the hands employed about the mill were discharged until their services should be again needed when the lessees should be ready to resume work again in all the departments. There is evidence tending to show the employes understood the suspension of work was to be for only a short time. It was conceded by counsel for defendant, at the trial, the lessees "did at some time expect to start up again." For that purpose they were getting in coal, and doing other things indicating an intention to resume business. The evidence tends to show the date it was expected labor would be resumed was about the 1st of August next after the destruction of the property in July. So far as other principal facts may be thought to be necessary to an understanding of the decision to be rendered, they will be stated, otherwise not.

One condition of the insurance contract is, if the assured "shall allow the building herein covered to become vacant and unoccupied, the policy shall become null and void." There is no ground for the insistence there was a breach of this condition of the policy. It is undeniable a number of employes were retained in the service of the lessees, and were actually engaged in and about their usual work in the mill, up to and on the day the fire occurred. All the plant and much valuable

material, and some manufactured goods, were in the building. One of the lessees was either in or at the building when the fire was discovered, and came there with money to pay persons engaged as laborers about the mill. A night and day watchman were retained, and performed their usual duties. It is so plain it needs no discussion, the property was at no time before the fire "vacant and unoccupied," in the sense those terms are used in the policy.

Another condition of the policy is, "if it be a manufacturing establishment, running in whole or in part over or extra time, or running at night, or if it shall cease to be operated, without special agreement indorsed hereon, all insurance by this policy shall thereupon cease." It is said the mill had "ceased to be operated" by the lessees, and, as a consequence, there was such a breach of this condition as rendered the policy inoperative, and no longer binding upon defendant. It will be noted, this provision is contained among the printed conditions annexed to the policy. But there was indorsed upon the policy at the time the description of the property was written, the following: "Other insurance permitted without notice, and permission granted to set up and operate machinery, and to make such repairs and alterations as may be necessary to keep the premises in good order during the term of this policy, without prejudice thereto," which, of course, became a part of the insurance contract. The original condition and this permission are to be construed together, as constituting the contract between the parties. When this is done, it is evident it was understood there might be temporary suspension in the operating of the mill. In the very nature of things, the setting up of machinery and making repairs and alterations would require the temporary suspension of some or all work about the factory,—perhaps not all in every instance, but that portion that would be interfered with in making needed repairs. It is therefore within the plain meaning of the contract, there might be temporary suspensions of a portion or of all of the work, for cer-

tain reasons, without prejudice to the contract, and among the causes is, to "make such repairs and alterations as may be necessary to keep the premises in good order." There is some evidence that one object of the suspension of the general work of the mill was, that needed repairs might be made. The trial court may have found such was the case, and the finding of the Appellate Court, by the affirmance of its judgment the same way, would, of course, be conclusive on this court. Conceding such fact was well found, the temporary suspension of a large portion of the work at the mill, as was done, was rightful, as being within the express terms of the contract.

No doubt it is true, as counsel contend, the principal reason for the suspension of work, for the time being, was the difficulty of securing that quality of cotton at such prices as could be manufactured at a profit, and the contention is, it was a breach of the contract to close down the factory, as was done, for any such cause. The argument on this branch of the case assumes for its support that which does not exist in fact, viz., that there was a total suspension of work in the factory. Without this erroneous assumption, the position of counsel has little, if anything, to sustain it. What is the meaning to the words, "cease to be operated," as used in the policy? The operation of a large manufacturing establishment means doing everything necessary for its successful and profitable management. It would necessarily be the work of many hands, and the operation would be multiplied many fold. The duties of the many employes would be quite dissimilar and entirely independent of each other, but all necessary to either the profitable or successful operation of the factory. It would be the duty of some to buy the raw material to be manufactured, of others to run the engines to drive the spindles, of others to control and manage the carding and spinning, of others to put up and label the goods for the market, of others to make sales and take orders for goods as fast as manufactured, of others to deliver or ship goods when sold, and of others to perform

such duties as may be necessary to be done, and which it would be needless to enumerate. The ceasing to perform any one thing, for the time being, of the many required to be done, would certainly not be to cease to operate the factory. Any one might be temporarily suspended and yet the factory be said to be in successful operation. "Carding and spinning" is not all that is included in a "cotton factory." There must be the engine to drive the machinery, and fuel to make steam. The goods, when manufactured, must be put up and labeled, and when so prepared for the market, must be sold and shipped or delivered, and the doing of any one of these many things is a part, and even an essential part, of the operation of a large factory. Nor is the ceasing to do any one of them for a shorter or longer period ceasing to operate the factory. "Carding and spinning" is no more all of the operation of a great factory than the sale of the fabrics when produced. Many, very many, things are included in the operations of a factory, the doing of which is necessary to its successful management. The operating of an extensive factory does not mean it shall be kept employed in all its various departments every day,—that is, all the time. It would be unreasonable to construe the contract in this policy, that it means the factory, in all its departments, shall be kept in ceaseless motion. No one supposes it means that. It may properly be closed down over Sundays and all legal holidays, or for any cause that a prudent manager of such an establishment would deem prudent and best for the interests of the owners. On the same principle, one department may be kept in operation and others cease temporarily. It might be the fabrics manufactured might be in excess of the sales or the demands of trade, and for that reason a prudent superintendent might deem it best to stop the spindles and the looms for a season, or sales might be in excess of the supplies, and for that reason no goods would be contracted for a time. Would any one say that such partial stoppages would be a violation of the contract of insurance contained in

the policy in suit? So narrow a construction would make the contract of no value to the assured, and to observe it would render the usual and ordinary management of such an establishment impracticable. A rule of construction to all contracts shall be so interpreted that they may be capable of performance, if it can be done consistently with the intention of the parties. In this case the evidence shows some of the hands were retained in the service of the lessees, and continued to perform their usual duties up to the day the fire occurred. The trial court might have found the mill had not "ceased to be operated." That was one of the controverted questions of fact in the case not subject to review in this court, and as to which the finding of the Appellate Court, affirming the judgment of the trial court, is conclusive. This view leads to an affirmance of the judgment of the Appellate Court, without reference to other questions discussed.

But conceding there was a suspension of all work at the mill, and that the sole cause of such stoppage was the difficulty in procuring cotton of the quality that could be worked up at a profit, still it was but a temporary suspension, and the law is, a mere temporary suspension of business at such an establishment, for want of a supply of materials, is not ceasing to operate the factory, in the sense the words, "ceased to be operated," are used in the policy in suit. The rule in this respect is a reasonable one, and has many authorities in its support. It may be, and doubtless is, true, there are cases that sustain a different construction; but it is thought the rule here adopted has more and better considerations in its support than any other.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*