HENRY J. ROSENCRANS, Trustee, Respondent, v. NORTH AMERICAN INSURANCE COMPANY, Appellant.

Kansas City Court of Appeals, May 4, 1896.

1. **Insurance**: AGENTS: STIPULATION. The purchaser of a mill applied to the agents who had been carrying the insurance to transfer the same to him. It was determined rather to issue a new policy. The purchaser left the whole matter with the agents. They made application to a local agent near the property, who issued the policy. *Held*, in so doing they were not the agents of the purchaser but rather of the company. The policy stipulated that the person who applied for insurance should be the agent of the assured and not of the company. *Held*, whether upon a given state of facts one is or is not the agent of another is a question of law which the courts decide and have invariably repudiated all attempts by insurance companies to bind them by such provisions.

2. ———: INCUMBRANCE: NOTICE. Where the agents securing or issuing the policy know of the incumbrance and other conditions of the property, the company is estopped from avoiding the policy on account of such matters.

3. ———: STANDING IDLE. The standing idle clause of the policy is not intended to cover necessary interruptions arising from breakages, stage of water, want of material, and conditions of the weather.

*Appeal from the Jackson Circuit Court.*—HON. J. H. SLOVER, Judge.

AFFIRMED.

*Warner, Dean, Gibson & McLeod* for defendant.

(1) The application was a part of the policy, and every statement therein was a matter of express warranty, and hence material. A warranty is an agreement in the nature of a condition precedent, and, like

that, must be strictly complied with. *Daniels v. Ins. Co.*, 12 Cush. 416; *Ripley v. Ins. Co.*, 30 N. Y. 136; *Campbell v. Ins. Co.*, 98 Mass. 381; *Bennett v. Ins. Co.*, 50 Conn. 420; *Thomas v. Ins. Co.*, 108 Ill. 91; *Ins. Co. v. Garner*, 77 Ala. 210; *Schwarzbach v. Union*, 25 W. Va. 622, 652; *Dwight v. Ins. Co.*, 103 N. Y. 341. A breach of warranty is fatal though the insured act in perfect good faith. *Cooper v. Ins. Co.*, 50 Pa. St. 299; *Ins. Co. v. Macmorran*, 3 Dow. P. C. 255; *Sayles v. Ins. Co.*, 2 Curtis C. Ct. 610; *Witherell v. Ins. Co.*, 49 Me. 200; *Pawson v. Watson*, Cowp. 785; *Anderson v. Fitzgerald*, 24 Eng. L. & Eq. 1; 4 H. of L. Cas. 484; *Duckett v. Williams*, 2 C. & M. 348; *Ins. Co. v. Garner*, 77 Ala. 210; *Ripley v. Ins. Co.*, 30 N. Y. 136; *Hibbert v. Pigeon Park Ins.*, 339; s. c. Marsh, Ins. 272, per Lord Mansfield; *Anderson v. Fitzgerald*, 4 H. of L. Cas. 484; s. c., 24 Eng. L. & Eq. 1; *Ins. Co. v. Huntizinger*, 98 Pa. St. 41, 47; *Ins. Co. v. Arthur*, 30 Pa. St. 315, 331; *Lahner v. Ins. Co.*, 51 Mo. App. 447; *Mers v. Ins. Co.*, 68 Mo. 127, 131; *Maddox v. Ins. Co.*, 56 Mo. App. 343; *Vandenheuvel v. Church*, 2 Johns. Cas. (N. Y.) 173. (2) The insured is responsible for the application and concluded by the misrepresentations contained therein. This question has been met and determined in several cases. *Ins. Co. v. Fletcher*, 117 U. S. 519; *Ryan v. Ins. Co.*, 41 Conn. 168; *Richardson v. Ins. Co.*, 46 Me. 394; *Lama v. Ins. Co.*, 51 Mo. App. 451. (3) We respectfully submit that there was no dispute as to the facts of agency in this case. The policy itself provided that any person other than the assured who may have applied or procured this policy, or any renewal thereof, shall therein be deemed to have acted as the agent of the insured and not of this company. (4) In this case the policy relied on specified if the building cov-ered by this policy should be vacant or unoccupied at

the time of the granting of the insurance or thereafter become so, it should be void. Under such a contract property is presumed to be used in the usual manner. *Lead Works v. Ins. Co.*, 2 Fed. Rep. 479; *Mfg. Co. v. Ins. Co.*, 33 Fed. Rep. 232; *Whitney v. Ins. Co.*, 72 N. Y. 117. But the contract in question contains the further provision that if the property insured is a mill or manufactory, and it should stand idle or be run nights or over time without notice, the policy should be void. This provision is much broader and stronger than the one construed in the cases just cited. *Poor v. Humboldt*, 125 Mass. 274; *Cook v. Ins. Co.*, 70 Mo. 610.

*Trimble & Braley* for respondent.

(1) Appellant's first point is not applicable to this case because the warranties were never binding upon the plaintiff or his assignor. (2) Kinney, Medes & Crittenden were defendant's agents. The decisions are to the effect that such was the fact. *May v. Assur. Co.*, 27 Fed. Rep. 260; *Toy Co. v. Ins. Co.*, 52 N. W. Rep. (S. D.) 866; *Ins. Co. v. Ward*, 90 Ill. 545; *Ins. Co. v. Hartwell*, 123 Ind. 177; *Ins. Co. v. Saindon*, 52 Kan. 486; R. S. 1889, sec. 5915; *Price v. The People*, 106 Ill. 11; *Woodbury v. Ins. Co.*, 31 Conn. 517. This is a Missouri contract. The debt sued on is in litigation in this state and is governed by section 5915, Revised Statutes of Missouri, 1889. *Hardware Co. v. Lang*, 54 Mo. App. 154, affirmed in 29 S. W. Rep. 1010. This condition has been most severely dealt with and has been called hard names in Pennsylvania. *Nassauer v. Ins. Co.*, 109 Pa. St. 507 at 513; *Bernard v. Life Ass'n*, 12 N. Y. Misc. 10; *Elenberger v. Ins. Co.*, 89 Pa. St. 464, 469; *McGonigle v. Ins. Co.*, 168 Pa. St. 1; *Ins. Co. v. Jackson*, 83 Ill. 302; *Vilas v. Ins. Co.*, 72 N. Y. 590, 9 Hun, 121; *Benninghoff v. Ins. Co.*, 93 N. Y. 495,

501; *Estes v. Ins. Co.*, 33 Atl. Rep. (N. H.) 515; *Ins. Co. v. Lowery*, 32 S. W. Rep. (Ark.) 383, 384; *Ins. Co. v. Davis*, 40 Neb. 700, 708; *Hill v. Ins. Co.*, 99 Mich. 466; *Brewing Co. v. Ins. Co.*, 2 Mo. App. 934; *Moody v. Ins. Co.*, 52 Ohio St. 12, 20; *McMurray v. Ins. Co.*, 87 Iowa, 453; May on Insurance [2 Ed.], sec. 248; *La Salle v. Ins. Co.*, 43 N. J. L. 468. (3) If idle, it was due to low water or want of logs, reasons which excuse the nonperformance of the condition. *Whitney v. Ins. Co.*, 72 N. Y. 120; *Planing Mill v. Ins. Co.*, 72 Mich. 654; *Ladd v. Ins. Co.*, 70 Hun, 490. (4) Defendant's agent, Parker, knew of the existence of the deed of trust before the policy sued on was issued, and his knowledge was the defendant's knowledge. *Mfg. Co. v. Ins. Co.*, 1 Mo. App. 535; *Anthony v. Ins. Co.*, 48 Mo. App. 73; *Ins. Co. v. Monarch*, 32 S. W. Rep. (Ky.) 959; *Loan Co. v. Ins. Co.*, 44 Neb. 537, 546; *Trundle v. Ins. Co.*, 54 Mo. App. 188; *Planing Mill v. Ins. Co.*, 59 Mo. App. 204; *Burnham v. Ins. Co.*, 1 Mo. App. 616; *Burnham v. Ins. Co.*, 56 Mo. App. 582, and cases cited in appellant's brief therein; *Fireman's Fund Co. v. Norwood*, 69 Fed. Rep. 71; *Murphy v. Ins. Co.*, 62 Mo. App. 495; *Ins. Co. v. Malevinski*, 24 S. W. Rep. (Tex. Civ. App.) 804, 806; *Robbins v. Ins. Co.*, 79 Hun, 117; *Ins. Co. v. Sheffy*, 71 Miss. 219; *Anderson v. Ins. Co.*, 63 N. W. Rep. (Minn.) 241, overruling 60 N. W. Rep. 1095; *Collins v. Ins. Co.*, 27 S. W. Rep. (Tex. Civ. App.) 147; *Ins. Co. v. Hart*, 43 Neb. 441, 447; *Dupey v. Ins. Co.*, 63 Fed. Rep. 680, 687; *Ins. Co. v. Cusick*, 109 Pa. St. 157; *Parsons v. Ins. Co.*, 31 S. W. Rep. (Mo.) 117, 123; *Ass'n Co. v. Coffman*, 32 S. W. Rep. (Tex. Civ. App.) 810; *Ass'n v. Laning*, 31 S. W. Rep. (Tex. Civ. App.) 681; *McKinney v. Ins. Co.*, 89 Wis. 653; *Bloom v. Ins. Co.*, 62 N. W. Rep. (Iowa) 810; *Ins. Co. v. Dierks*, 43 Neb. 473, 480; *Maril v. Ins. Co.*, 23 S. E. Rep. (Ga.) 463; *Faust v. Ins. Co.*, 64 N. W. Rep. (Wis.)

883; *Jones v. Ins. Co.*, 38 Fed. Rep. 19; *Ins. Co. v. Jones,* 54 Ark. 373; *Mill Co. v. Ins. Co.*, 39 Pac. Rep. (Idaho) 196.

GILL, J.—This is an action on an insurance policy issued October 1, 1892, to one E. W. Culver and covering a large mill plant located in Lawrence county, Arkansas. During the life of the policy, in March, 1893, the property was destroyed by fire. Shortly thereafter Culver assigned the policy and all claims thereunder to plaintiff Rosencrans, as trustee, for the benefit of the Union National Bank of Kansas City, to whom Culver was then largely indebted. The mill had formerly belonged to a corporation known as the North Arkansas Lumber Company, of which Culver was the vice-president. The company had become financially involved and had incumbered its property by a mortgage and deed of trust, to secure said Union National Bank on a claim of about $35,000 which it had against the lumber company. In September, 1892, Culver bought the property from the lumber company and assumed this indebtedness to the bank. Kinney, Medes & Crittenden, insurance agents at Kansas City, had been theretofore placing and carrying all insurance on the mill property. Immediately on the purchase of the mill, Culver went with one of the bank's officers to the office of these insurance agents at Kansas [City, intending to have the policies assigned, or changed so as to correspond with the new condition of things. After some consultation, it was concluded, rather than assign the existing policies, to take out new ones in Culver's name; and he (Culver) thereupon agreed to take from Kinney, Medes & Crittenden $20,000 insurance, the selection of the companies to be left with these agents. Culver had not, prior to this time, had anything to do with insuring

the mill property—that matter being left alone with Leach, the president and manager of the lumber company. The evidence clearly shows that Culver had expected Medes, the agent, to write the insurance in companies represented by this Kansas City agency. It seems, however, that the Medes agency could not write insurance on property located in Arkansas, and Medes thereupon applied to W. H. Parker, defendant's agent at Pine Bluff, Arkansas, and secured through that source the policy sued on. The policy was, in fact, written up by Parker and sent to Medes at Kansas City, who delivered same to the Union National Bank, for Culver, and collected from Culver the premium. Culver knew nothing of the manner in which the policy was obtained. Out of the premium, the agent's commissions were deducted—half going to Medes and the other part to Parker—and the balance was paid over to the defendant company.

The main defenses relied on are: That the property was incumbered; that the mill had not been a profitable concern; that it was idle and not in operation; that there were no watchmen; that the mill did not employ forty men, etc., all contrary to certain representations contained in a printed or written application alleged to have been furnished Parker, the defendant's agent, when the policy was issued.

On a trial by jury, there was a verdict and judgment for plaintiff in the sum of $2,244 and defendant appealed.

The principal objections to plaintiff's right to recover in this action are based on certain false statements in relation to the title and condition of the property, which are found in an application filled out and signed by Kinney, Medes & Crittenden and forwarded to defendant's agent at Pine Bluff, Arkansas. It was an application in the usual form, purporting to

be that of "E. W. Culver, Applicant, by Kinney, Medes & Crittenden, Agents." It stated, in effect, that there was no incumbrance on the property, that the mill was then being operated and forty men employed, that the enterprise was profitable and had been so for the last year, etc., closing with the statement that "the applicant hereby covenants and agrees to and with the said company that the foregoing is a just, full, and true exposition of all the facts and circumstances in regard to the property hereinbefore mentioned, and said answers and representations are considered the basis on which insurance is to be effected, and the same is understood as incorporated in and forming a part of the policy," etc.

I do not see how it can be successfully claimed that the assured, Culver, is bound by the contents of this application. The testimony stands undisputed that he never authorized Kinney, Medes & Crittenden (or Medes, with whom he dealt) to make and sign any such paper for him, and that he had no knowledge that they had done so until after the fire and about the time this action was commenced. Medes, who alone dealt with Culver, and Culver himself, both testified that no such authority was given. Culver, in this instance, did as is usual with parties desiring to place insurance, he applied to Medes, who was engaged in that business, for $20,000 insurance on his property. Culver knew that the Medes office represented various companies and left it with the agent to furnish the requisite policies. Medes secured the policy in suit and Culver paid him for it. Medes was not Culver's agent to solicit insurance, but was rather the defendant's agent in furnishing the policy. *May v. Assur. Co.*, 27 Fed. Rep. 260; *Lycoming v. Ins. Co.*, 90 Ill. 545; *The Ins. Co. v. Hartwell*, 123 Ind. 177; *Ins. Co.*

*v. Saindon*, 52 Kan. 486; *McGonigle v. Ins. Co.*, 168 Pa. St. 1.

The facts in the case first above cited were very similar to those here. A applied to B, an insurance agent, who had been carrying his insurance for a series of years, and who knew the condition of his property, for $20,000 insurance, and B being unwilling to carry that amount in the companies he represented, applied to C, the agent of another company, for a policy of $2,500, and C, without any communication with A, or knowledge of the property, took the insurance, wrote the policy and delivered it to B, who gave it to A. It was there held by the United States circuit court, Judge BREWER delivering the opinion, that the company represented by C was bound; that B was not A's agent, but was C's subagent, and his acts and knowledge were to be treated as those of the insurance company.

In the Hartwell case, *supra*, the supreme court of Indiana said: "Insurance companies are not only responsible for the acts of their agents, within the scope of their agency, but also for the acts of their agent's clerks, when the company knew as it ought to have known, that other persons would be employed by and to act for the agents." In the case at bar, the defendant saw proper to permit its agent at Pine Bluff, Arkansas, to extend his business, negotiate for and place insurance with parties at Kansas City. In order to do this, it was, of course, necessary to engage someone at the latter place to attend to defendant's interest. In this capacity, Kinney, Medes & Crittenden acted. They represented the defendant; they reported certain risks which the defendant might secure; the defendant accepted, signed up the policy and forwarded the same to the firm at Kansas City, who took and delivered it to the assured and collected the premium, which, less

the agent's commission, was remitted to the defendant.

In support of the contention that Kinney, Medes & Crittenden were Culver's agents, defendant's counsel invoke that provision of the policy reciting that "any person other than the assured who may have applied for or procured this policy, or any renewal thereof, shall therein be deemed to have acted as the agent of the assured and not that of the company." The courts have quite uniformly rejected this effort of insurance companies to make *their* agents the agents of the assured, when such agents have acted within the scope of their employment.    2 Wood on Fire Ins., sec. 409, and authorities cited.    As well expressed by the Indiana supreme court, in the *Hartwell* case, 123 Ind. 193:   "Whether upon a given state of facts, one is or is not to be deemed the agent of another, is a question of law, which the courts decide themselves, and they have invariably repudiated all attempts of insurance companies to bind them by such provisions."   An insurance company will not be allowed to negotiate and secure a contract of insurance through the efforts of its agent for that purpose, and then, by a clause inserted in the body of a policy, transfer the company's responsibility for the acts of this agent to the other contracting party.    It is an attempt to reverse the law of agency and to declare that a party is not bound by the acts of his agent.

Eliminating, then, all defenses based on the application and there is nothing left upon which defendant can justly rely to defeat this action.    The evidence quite conclusively shows that when the insurance was taken out, the defendant's agents fully understood that the property was incumbered.    Kinney, Medes & Crittenden had, at that time, full knowledge of its condition, and Parker, the agent at Pine Bluff, was like-

wise informed before the premium was paid. It has been repeatedly decided that such notice or knowledge on the part of the agent issuing the policy will estop the company from avoiding the policy on account of such matters. *Anthony v. Ins. Co.*, 48 Mo. App. 65, and cases cited; *Trundle v. Ins. Co.*, 54 Mo. App. 197; *Columbia Planing Mill v. Ins. Co.*, 59 Mo. App. 204.

There was some evidence to the effect that the mill was occasionally stopped on account of the weather, want of materials to work on, or stage of the water, and it was claimed that this violated the condition of the policy which provided that the mill should not "stand idle." In this connection, the trial court instructed the jury: "That although the actual running of the mill may have been stopped at intervals between the first of October, 1892, and the time of the fire, for several days or weeks at a time, yet, if the jury believe from the evidence that the stopping of the mill was necessitated by the stage of the water in Black River and Lindsay's bay, or by the character of the weather, or for the temporary want of logs, and not as the result of an intent on the part of Culver to cease operating the mill as such, then such stopping of the actual running of the mill does not constitute such standing idle of the mill as will avoid the policy, and constitutes no defense to this suit."

In the light of the evidence, we can discover no fault in this instruction. From the undisputed testimony, it appeared that the mill was run and operated as is usual with such manufactories; that the occasional stoppage of the machinery was because of the temporary want of logs, the stage of the water, or condition of the weather, etc., and that during all such suspensions, men were kept working about the mill in doing repairs, shipping lumber, etc. The mill was not, at any time, unoccupied, or in want of business. Besides

this, watchmen were kept in and about the premises, night and day. As well said by plaintiff's counsel, the defendant, in issuing its policy and using the terms there employed, must be held to a knowledge of the character of the property insured. It undertook to insure plaintiff's sawmill, machinery, and lumber. The face of the policy gave defendant notice that the continual operation of the mill was subject to the usual interruptions of breakage, want of water, or materials to work upon; and that there might be, from time to time, temporary suspensions of the mill on that account. The *standing idle*, or *vacancy* clause of the policy was not intended to cover these necessary interruptions. 1 May on Ins., sec. 248, and other authorities cited in plaintiff's brief.

After a careful consideration of every point urged for reversal, we find nothing to justify us in disturbing the judgment and it will accordingly be affirmed. All concur.