WAUKAU MILLING COMPANY and another, Respondents, vs.
   CITIZENS' MUTUAL FIRE INSURANCE COMPANY OF JANES-
   VILLE, WISCONSIN, Appellant.
SAME, Respondents, vs. BOWER CITY MUTUAL FIRE INSUR-
   ANCE COMPANY OF JANESVILLE, WISCONSIN, Appellant.
SAME, Respondents, vs. CENTRAL MANUFACTURERS' MUTUAL
   INSURANCE COMPANY OF VAN WERT, OHIO, Appellant.

*November 7—December 4, 1906.*

*Fire insurance: Forfeiture: Breach of promissory warranty: Suspension of business: "Cease to be operated:" Application: Admissibility: Statutes: Foreign and domestic insurance companies.*

1. Policies of insurance of the Wisconsin standard form provided, among other things, that the entire policy, unless otherwise provided by agreement indorsed thereon or added thereto, should be void if the subject of insurance were a manufacturing establishment and it ceased to be operated for more than ten consecutive days.   The risk covered a flouring mill operated by water power.   By reason of severe weather the water in the mill race froze, and the insured was therefore unable to operate the mill for more than ten consecutive days, but was operating it when the loss occurred.   The agent, when soliciting the insurance, knew the mill was operated by water power, and that in severe weather the race might freeze and thereby prevent its

operation. The mill was not in operation when the agent examined the premises. *Held:*

(1) The specified clause in the policies must be given a reasonable construction in the light of the conditions attending the subject matter of the contract and within the contemplation of the parties when the contracts were made.

(2) The cessation of operation covered by the policies had no reference to such cessation as occurred in the usual course of the business of the insured or as arose from causes beyond its control.

(3) The fact that the mill could not be operated in severe weather on account of lack of power was an existing fact and known to the insurance companies at the time of issuing the policies, and therefore the policy provision respecting nonoperation did not apply.

2. Secs. 1941—1 to 1941—13 and 1945a, Stats. 1898, respecting "mutual companies in cities and villages," have reference to insurance companies organized under the laws of Wisconsin only, and have no reference to foreign mutual fire insurance companies.

3. Sec. 1945a, Stats. 1898 (requiring that all fire insurance corporations shall, upon the issue or renewal of any policy, attach to such policy or indorse thereon a true copy of any application which by the terms of such policy is made a part thereof or of the contract of insurance or referred to therein, or which may in any manner affect the validity of such policy), excepts from its operation, among other insurance corporations, mutual companies in cities and villages. Plaintiff signed an application, addressed to an Ohio mutual insurance company, requesting $4,000 of insurance on its flouring mill and represented that when the mill was not in operation it maintained therein a watchman. The agent, on receipt of such application, placed $2,000 of the insurance in the Ohio company, and $1,000 each in Wisconsin city mutual companies. In an action to recover for a loss under such policies the defendants offered proof of the application and its falsity. The application was not attached to the Wisconsin policies or referred to therein. The testimony was ruled out. *Held:*

(1) The ruling was proper as to the Ohio company, since it was not within the exceptions of sec. 1945a.

(2) The ruling was also proper as to the domestic companies, since they were not parties to the application addressed exclusively to the Ohio company.

APPEAL from a judgment of the circuit court for Winnebago county: GEO. W. BURNELL, Circuit Judge. *Affirmed.*

The plaintiff *Waukau Milling Company* obtained insurance upon its mill and machinery under three separate policies with the defendants, one for $2,000 in the *Central Manufacturers' Mutual Insurance Company,* of Van Wert, Ohio, and a policy in each of the other two defendant companies for $1,000 each. A loss occurred by fire, in consequence of which separate actions were commenced against each company. These actions were afterwards consolidated. The plaintiff *R. H. Hackett* joined as mortgagee of the insured premises. Several defenses were raised in the answers, but were finally reduced to two, namely: (1) That the policies were avoided because the mill ceased to be operated for more than ten consecutive days, contrary to the stipulations in the policies. (2) That the plaintiff failed to keep a watchman on the premises at all times when the mill was not in operation. The case was tried by the court and a jury and the following verdict returned:

"(1) Did Lorenze at the time he made application for insurance state to Brownell in substance that he expected that, during a part of the time in the following winter, the mill would not run on account of the weather? *A.* Yes. (2) Did the mill run after the 29th of November, 1904, at all times when it was practicable to do so with the water which they then had? *A.* Yes. (3) Was the lack of water power during the winter due to any want of ordinary care and prudence on the part of the plaintiff or its officers and agents? *A.* No."

Motions were made by both sides for judgment, and motions to set the verdict aside and for a new trial were made on behalf of defendants. Judgment was ordered and entered for plaintiffs upon the verdict for $1,058.75 against each of defendants *Citizens' Mutual Fire Insurance Company* and *Bower City Insurance Company,* of Janesville, and against the *Central Manufacturers' Mutual Insurance Company* for $2,077.23. The judgment further provided that, at the time of issuing the policies and since, the plaintiff *R. H. Hackett* had an interest in the insured property as mortgagee, and at

the time of trial this interest amounted to $2,500 with interest at six per cent. from October 8, 1904, and that there be paid to him as such mortgagee $2,500 and interest. From this judgment defendants appealed.

*John M. Whitehead,* for the appellant *Citizens' Mutual Fire Insurance Company.*

*Thos. S. Nolan,* for the appellant *Bower City Mutual Fire Insurance Company.*

*Myron H. Beach,* for the appellant *Central Manufacturers' Mutual Insurance Company.*

For the respondents there was a brief by *Barbers & Beglinger,* and oral argument by *Charles Barber* and *Fred Beglinger.*

KERWIN, J. The property covered by the policies in question consisted of a three-story water-power flour and feed mill building with equipments. It was located in Waukau, a small village in Winnebago county, Wisconsin, near a small creek which is fed by Rush lake. For several years prior to the date of the policies in suit the mill had been run only by water power, and during the winter, when water power was not available, it was not operated. The insurance was solicited by an agent of the companies named Brownell, who visited and examined the property November 9, 1904, accompanied by Mr. Lorenze, president of plaintiff *Waukau Milling Company.* Brownell knew that the mill was a water-power mill and the conditions and situation of the water power, and that in severe weather the race which carried the water from the pond to the mill would freeze and thereby prevent the operation of the mill. After examination of the property the agent took a written application from Mr. Lorenze for $4,000 of insurance on the property in the defendant *Central Manufacturers' Insurance Company,* of Van Wert, Ohio, the application being addressed to that company only, and forwarded the same to H. J. Cunningham, agent of the three companies, at Janesville, Wisconsin. Cunningham, instead

of putting the insurance in the *Central Manufacturers' Insurance Company,* in accordance with the application, split it up, putting $2,000 in the Ohio company and $1,000 in each of the other companies, and the three policies were forwarded to plaintiff *Waukau Milling Company.* The policies were all of the Wisconsin standard form and none of them in any way referred to the application. This application was offered in evidence by defendants on the trial and ruled out. At the time the agent, Brownell, examined the premises the mill was not in operation, and did not commence to run until about three weeks thereafter. From November 29, 1904, to January 1, 1905, the mill was operated, but during the fore part of January, 1905, the weather became so severe that the water in the race froze, and, owing to the severity of the winter, plaintiffs were unable to operate the mill until about March 24, 1905, at which time they resumed operation. The policies were issued November 10, 1904. In March, 1905, Mr. Lorenze obtained from the defendants permission to make alterations and repairs and install additional machinery in the mill. This permission was granted in the form of a rider, which was attached to each policy, dated March 13, 1905. On March 30, 1905, the fire which destroyed the property occurred. The application for insurance to the *Central Manufacturers' Insurance Company,* of Van Wert, Ohio, heretofore referred to, contained question and answer to the effect that the plaintiff *Waukau Milling Company* kept a watchman on the premises at all times when the mill was not in operation.

1. It is claimed on the part of the defense that each policy became void because the mill ceased to be operated, contrary to the provisions of the policy. Each policy provides:

"This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void . . . if the subject of insurance be a manufacturing establishment and . . . if it cease to be operated for more than ten consecutive days."

The question, therefore, arises under this head, whether the failure to operate the mill for more than ten consecutive days because of lack of water power occasioned by the severe weather rendered the policies void. The clause in the policy referred to must have a reasonable construction in the light of the conditions attending the subject matter of the contract and within the contemplation of the parties at the time the contract was made. It will be admitted that the provision is not an arbitrary one which will be enforced according to its letter and under all circumstances, regardless of whether the cause of such failure to operate is beyond the control of the assured, or whether the nonoperation be such as may fairly be said to have been within the contemplation of the parties when the contract was made as attending the use of the insured property. So it has often been held that a mere temporary cessation of operation due to natural causes is not a violation of a clause similar to the one under consideration. *Ladd v. Ætna Ins. Co.* 147 N. Y. 478, 42 N. E. 197; *Whitney v. Black River Ins. Co.* 72 N. Y. 117; *Bellevue R. M. Co. v. London & L. F. Ins. Co.* 4 Idaho, 307, 39 Pac. 196. Where, as in the case at bar, it was known to the insurance company at the time of issuing the policy that the insured mill might, by reason of lack of power during the term covered by the policy, be forced to cease operation for a part of the season, it must follow that the period of such cessation must have been contemplated by the parties to the contract as not falling within the clause against cessation of operation. The cessation of operation covered by the policy manifestly has no reference to such as occurs in the usual course of the business, or such as arises from causes beyond the control of the insured. Here the evidence shows, and the jury found, that the defendants knew at the time the policies were issued that during the ensuing winter the mill might not run on account of weather conditions causing failure of water power, and that the mill did in fact run at all times practicable when it had power, and that the lack of power during

the times it was not operated was not due to any want of ordinary care on the part of the milling company. So it seems clear that the parties contracted with reference to the existing conditions of the business, and contemplated that the mill might not be operated during part of the season on account of lack of power, and that such failure to operate would not come within the clause of the policies in question. Such clause cannot work a forfeiture because of failure to operate on account of conditions which must have been in contemplation of the parties when the contract of insurance was made. We think the great weight of authority supports the doctrine that the failure to operate under the circumstances in this case was not such a cessation of operation as is contemplated by the clause in the policies in question. *Ladd v. Ætna Ins. Co.* 147 N. Y. 478, 42 N. E. 197; *Whitney v. Black River Ins. Co.* 72 N. Y. 117; *Bellevue R. M. Co. v. London & L. F. Ins. Co.* 4 Idaho, 307, 39 Pac. 196; *Rosencrans v. N. A. Ins. Co.* 66 Mo. App. 352; *American F. Ins. Co. v. Brighton C. Mfg. Co.* 125 Ill. 131, 17 N. E. 771; *City P. & S. M. Co. v. Merchants', M. & C. M. F. Ins. Co.* 72 Mich. 654, 40 N. W. 777; *Poss v. Western A. Co.* 7 Lea, 704; *May v. Buckeye M. Ins. Co.* 25 Wis. 291.

In *Ladd v. Ætna Ins. Co.* 147 N. Y. 478, 42 N. E. 197, the policy covered a water-power sawmill building and machinery, and contained a stipulation similar to the one in question here. Operation ceased for about a month, owing to the illness of the sawyer. It was claimed that the policy was rendered void because the mill ceased to be operated for more than ten consecutive days, contrary to the provisions of the policy. The court held that the temporary shutting down of the mill on account of sickness of the operator did not constitute a violation of the policy. At page 484 (42 N. E. 198) the court said:

"We are unable to agree with the defendant's contention that this clause of the policy is too clear for argument, and that any temporary cessation of the operation of the ma-

54        SUPREME COURT OF WISCONSIN.      [Dec.

Waukau Milling Co. v. Citizens' Mut. F. Ins. Co. 130 Wis. 47.

chinery in a manufacturing establishment by reason of sickness, breakdown, low water, or other unavoidable cause, although it is not the intent of the insured to cease operating or to allow the premises to become vacant or unoccupied, is a clear violation of its provisions."

In *Whitney v. Black River Ins. Co.* 72 N. Y. 117, the policy contained the provision rendering it void in case the premises, should become "vacant and unoccupied." In this case the mill was operated by water power, and it was held that delays and interruptions incident to the business, such as low water, diminished custom, or derangement of machinery causing a temporary discontinuance of the use of the mill, did not constitute a breach of the condition, or render the mill "vacant and unoccupied" within the meaning of the policy. At page 120 the court said:

"The description in the policy shows that the defendant knew that the mill was operated by water power, and as it was a sawmill the insurer must be presumed to have known that sawmills are or may be used as well for custom work as for sawing the logs of the owner, and, as machinery was used for the operation of the mill, the fact that it was liable to break down and need repairs must also have been within the contemplation of the parties when the policy was issued. The interruptions of the business and the discontinuance of the active use of the sawmill by reason of low water, diminished custom, or derangement of the machinery, if held to be a violation of the condition and to create a vacancy and non-occupation of the building within the true meaning of the condition, would greatly impair the value of the contract as a contract of indemnity, and the result would be that the contract would be deemed forfeited by the happening of events which might reasonably have been anticipated, and which were among the common incidents of the business carried on on the insured premises."

In *Bellevue R. M. Co. v. London & L. F. Ins. Co.* 4 Idaho, 307, 39 Pac. 196, the clause in the policy was identical with those in the policies before us. The mill ceased to be operated because the mill race froze up in the winter, as it had

for several years prior to the writing of the policy, which fact
was known to the agent of the company before issuing the
policy. It was held that the period of nonoperation was in-
cident to the use of the mill and taken into consideration by
the insurance company when it issued the policy. In *Ameri-
can F. Ins. Co. v. Brighton C. Mfg. Co.* 125 Ill. 131, 17 N.
E. 771, the policy contained a clause providing that, if the
subject of insurance be a manufacturing establishment and
ceased to be operated without agreement indorsed upon the
policy, the insurance should cease. The property covered
was a cotton-mill building and the plant necessary to run it.
Operations were suspended, so far as running the mill was
concerned, for about eight days before the fire because of
difficulty in securing the proper quality of cotton. It was
claimed that such suspension of operation was a ceasing to
operate within the clause of the policy and avoided the in-
surance, but it was held that there was no cessation of opera-
tion within the meaning of the policy, but simply a tempo-
rary suspension of business. In *City P. & S. M. Co. v. Mer-
chants', M. & C. M. F. Ins. Co.* 72 Mich. 654, 40 N. W. 777,
the policy provided that if the mill should cease to be oper-
ated, unless shut down for repairs, without a notice to or
consent of the company, the policy should become void. The
mill was a shingle mill and was operated in connection with
a planing mill. The shingle mill had not been operated from
July 29 to September 10, 1886, at which latter date it was
burned. The mill was not operated because the stock of logs
had been exhausted, and a new supply was expected from day
to day, but their delivery was delayed on account of a low
stage of water. It was held that the ceasing to operate was a
mere temporary suspension, and that such suspension could
not be regarded as a "ceasing to operate" within the mean-
ing of the policy. In *Poss v. Western A. Co.* 7 Lea, 704, the
factory shut down by reason of an epidemic of yellow fever,
and was not in operation at the time of the fire. It was

56   SUPREME COURT OF WISCONSIN.   [Dec..

Waukau Milling Co. v. Citizens' Mut. F. Ins. Co. 130 Wis. 47.

claimed that there was a ceasing to operate which rendered the policy void. It was held that the clause in the policy referred to a permanent and not a temporary cessation of operation of the establishment, and that such failure to operate occasioned by the epidemic was not a permanent cessation of operation, and therefore did not avoid the policy. Referring to this clause the court said:

"It could never have been intended to apply to a ceasing to operate occasioned by the usual incidents to the business, among which would be the impossibility of procuring operatives temporarily for any cause."

The doctrine of the foregoing cases is in harmony with the rule laid down by this court in *May v. Buckeye M. Ins. Co.* 25 Wis. 291.

We shall not extend this opinion by a review of the numerous cases cited to our attention by counsel for defendants, but may say in passing that they have received careful attention. Many of them rest upon the doctrine that evidence of parol agreements at or prior to the time of issuing the policy, or evidence of waiver of conditions as to future conduct respecting the subject matter of the insurance contrary to the provisions of the policy, is not admissible. Other cases cited recognize the distinction between agreements respecting waiver of conditions as to future conduct and knowledge of existing conditions respecting the property insured. In *Sowers v. Mutual F. Ins. Co.* 113 Iowa, 551, 553, 85 N. W. 764, the court said:

"While an insurance company may be bound by knowledge of its soliciting agent regarding past or present conditions, such an agent has no power to waive future conditions."

In *Stone v. Howard Ins. Co.* 153 Mass. 475, at page 480 (27 N. E. 6), the court said:

"Where an existing fact is at variance with a clause of an insurance policy, and is known by the company to be so,

there may be an implication that the clause is not insisted on. *Newmarket Sav. Bank v. Royal Ins. Co.* 150 Mass. 374, 23 N. E. 210. But a clause which makes express provision for the future cannot be thus done away with."

In *McNierney v. Agricultural Ins. Co.* 48 Hun, 239, at page 243, the court said:

"It is now well settled that knowledge of an existing fact that would avoid the policy from its date will estop an insurer from insisting upon such fact as a breach of a warranty. *Van Schoick v. Niagara F. Ins. Co.* 68 N. Y. 434; *Woodruff v. Imperial F. Ins. Co.* 83 N. Y. 133; *Short v. Home Ins. Co.* 90 N. Y. 16."

The point was considered by this court in *Welch v. Fire Asso.* 120 Wis. 456, 461, 98 N. W. 227, where it is said:

"In *Roberts v. Continental Ins. Co.* 41 Wis. 321, after citing a long line of decisions in this court, it was said, in effect, that if, when the agent of an insurance company delivers a policy of insurance, he has knowledge of facts as regards the subject of the insurance inconsistent with the terms of the policy, the assurer, by accepting the premium, is estopped from declaring the policy void because the terms thereof were not so changed in writing as to conform to the facts," and citing a long line of decisions to that effect.

The fact that the mill could not be operated in severe winter weather on account of lack of power was an existing fact and known to the companies at the time of issuing the policies. The provision, therefore, respecting nonoperation had no reference to temporary cessation of operation occasioned by lack of power.

2. The defense that no watchman was kept in the mill turns upon whether the application to the defendant Ohio company was admissible and binding upon the plaintiff. None of the policies refer to this application or require the keeping of a watchman, so, unless the application is a part of the contract, there was no requirement for a watchman, and hence no violation of the policy for failure to keep one in the

mill.   The application was addressed to the Ohio company
and made no reference to the other companies or the Janes-
ville agency.   It called for $4,000 insurance in the Ohio
company for five years, and contained the following pro-
vision:

"And the applicant hereinbefore named, by accepting this
policy bearing even number and date herewith, becomes a
member of this company and agrees to pay it the premium
annually during the life of this policy, and, in addition there-
to, such sum or sums, in no event to exceed in the aggregate
five times the amount of said annual premium, at such time
or times, in such manner, and by such instalments as the di-
rectors of said company shall assess or order, pursuant to its
charter and by-laws and the laws of the state of Ohio. · And
warrants the answers to the above questions to be full, true,
and material to the risk and shall be continuing warranties
during the life of said policy; and this application is made
the basis upon which said policy is issued and becomes a
part of same."

The application was excluded by the court below, and the
ruling in that regard is complained of.   It is claimed that
the application was admissible as to the Ohio company be-
cause it was a "mutual company in cities and villages" with-
in the meaning of sec. 1945a, Stats. 1898.   The statute pro-
vides:

"All fire insurance corporations except town insurance cor-
porations, millers' and manufacturers', mutual companies in
cities and villages, druggists' mutual companies, church in-
surance corporations and retail lumber dealers' insurance
associations shall, upon the issue or renewal of any policy,
attach to such policy or indorse thereon a true copy of any
application or representations of the assured which by the
terms of such policy are made a part thereof or of the con-
tract of insurance or referred to therein, or which may in any
manner affect the validity of such policy.   The omission so
to do shall not render the policy invalid, but if any corpora-
tion neglect to comply with the requirements of this section
it shall forever be precluded from pleading, alleging or prov-

ing such application or representations, or any part thereof, or the falsity thereof or any part thereof in any action upon such policy; and the plaintiff in any such action shall not be required in order to recover either to plead or prove such application or representations, but may do so at his option."

It is claimed by counsel for the Ohio company that "mutual companies in cities and villages" within the meaning of this statute includes the defendant Ohio company organized under the laws of Ohio, and hence that it could prove the application and the falsity thereof, although not attached to the policy or referred to therein. A careful examination of the statutes respecting mutual fire insurance companies in this state and the history of such legislation convinces us that secs. 1941—1 to 1941—13, respecting "mutual companies in cities and villages," have reference to companies organized under the laws of this state only, and that "mutual companies in cities and villages" mentioned in sec. 1945a refer to such companies organized under the laws of this state. These several mutual fire insurance companies excepted from the operation of sec. 1945a ("town insurance corporations, millers' and manufacturers', mutual companies in cities and villages, druggists' mutual companies, church insurance corporations and retail lumber dealers' insurance associations") manifestly have reference to local companies and associations within the limits of the state and authorized to organize under the laws of the state for mutual protection. Their powers are defined by statute. They are obviously intended to provide for classes of persons having, by reason of location, occupation, or association, a mutual interest in fire protection. Sec. 1941—1, Stats. 1898, provides, in effect, that any number of persons, not less than twenty-five, residing in any city or cities, village or villages in the same county, who shall own collectively insurable property of not less than $25,000 in value which they desire to have insured, may form themselves into a corporation for mutual insurance by complying with the conditions named, which include the

.signing of articles of organization, reciting that they are resi-
dents of a certain city or cities or villages in some county in
the state of Wisconsin; and sec. 1941—5 provides, substan-
tially, that no such corporation shall insure any property out
of the city or village in which it is located, unless a resolu-
tion be adopted by a majority of the members authorizing the
directors to insure property in other villages and cities than
that in which the corporation is located, and in cities and
villages of counties adjoining such county. It is plain that
these "mutual companies in cities and villages," restricted
in their scope and powers as they are, were intended by the
legislature to refer to mutual companies organized in cities
and villages in this state, and have no reference to foreign
mutual fire insurance companies. There is nothing in the
statute to indicate that it was the intention of the legislature
that secs. 1941—1 to 1941—13 should apply to corporations
organized outside of the limits of the state of Wisconsin, and
hence we must presume that these statutes have no operation
beyond the territorial limits of the state and apply only to
persons and things in this state. 23 Am. & Eng. Ency. of
Law (1st ed.) 346 (bottom); *Butterfield v. Ogborn,* 1 Dis-
ney (Ohio) 550; Story, Confl. of Laws, §§ 18, 19, 20; *Chap-
pell v. Purday,* 14 M. & W. 303. In *Farnum v. Blackstone
Canal Corp.* 1 Summ. 46, STORY, J., says:

"Every legislature, however broad may be its enactments,
is supposed to confine them to cases or persons within the
reach of its sovereignty."

Respecting the Janesville companies organized under the
laws of this state, the application was not made to them.
They cannot be said to be parties in any sense to the applica-
tion made exclusively to the Ohio company, and therefore it
was properly excluded as to them. The policies issued by the
Janesville companies were for $1,000 each for the term of
one year. They in no way referred to the application, which
was made to the Ohio company for $4,000 insurance for five

years. It cannot be said that the Janesville policies were is-
sued upon the application to the Ohio company or that such
application was an application to the Janesville companies.
The plaintiff *Waukau Milling Company,* therefore, did not
contract with the Janesville companies that it would keep a
watchman in the mill. *Vilas v. N. Y. C. Ins. Co.* 72 N. Y.
590.

We therefore hold that there was no proof that the plaintiff
*Waukau Milling Company* agreed to keep a watchman in the
premises, and that there was no breach of the provision in
the policies respecting cessation of operation. It follows,
therefore, that the judgment of the court below must be af-
firmed.

*By the Court.*—The judgment is affirmed.