LIVERPOOL & LONDON & GLOBE INS. CO. v. TILLAMOOK LUMBER-
ING CO. et al.

(Circuit Court of Appeals, Ninth Circuit.   May 2, 1910.)

No. 1,806.

INSURANCE (§ 321*)—WATCHMAN CLAUSE—BREACH—"IDLE AND INOPERATIVE."
    A fire policy warranted that assured at all times when the property was
"idle or inoperative" would keep on duty a constant day and night watch-
man, and that, if the property was "idle" or shut down for more than
30 days at one time, permission should be secured and indorsed on the pol-
icy.  *Held*, that the word "idle" was used in the same sense in both places,
that the term "idle and inoperative" meant a state of disuse, and that
the plant was not therefore idle or inoperative so as to require a watch-
man during a customary suspension of operation of the mill on Sunday,
or the nonuse of the electric plant during the daytime.
    [Ed. Note.—For other cases, see Insurance, Cent. Dig. § 759; Dec. Dig.
§ 321.*]

In Error to the Circuit Court of the United States for the District
of Oregon.

Action by the Tillamook Lumbering Company and another against
the Liverpool & London & Globe Insurance Company.  Judgment for
plaintiffs (175 Fed. 508), and defendant brings error.  Affirmed.

Ben C. Dey, R. A. Leiter, James E. Fenton, William D. Fenton,
and T. C. Coogan, for plaintiff in error.

H. T. Botts, for defendants in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge.   The policy of fire insurance upon which the
present action was brought was issued April 17, 1907.  The case was
submitted to the trial court upon an agreed statement of facts, from
which it appears, among other things, that the policy contained this
clause:

"Watchman's Clause.

    "It is warranted by the assured that at all times when the property herein
described shall be idle or inoperative, a constant day and night watchman
shall be kept on duty; and provided that if such property be idle or shut
down for more than thirty days at any one time, notice must be given this
company and permission to remain idle for such time must be indorsed hereon,
or this policy shall immediately cease and determine."

It was further stipulated:

    "That the property covered by the policy of insurance included a lumber
mill and an electric light plant; that the lumber mill was running during
every business day from the date of the policy to the date of the fire, but was
not kept running on Sundays, and was not running at the time of the fire;
that the electric light plant was run every night from the date of the policy
until the date of the fire, but was not run during the day, and that the prop-
erty had been run in this manner, and this was the customary way in which
the same had been operated for several years prior to the time of the fire;
that the electric light plant was not running at the time of the fire, which oc-
curred about nine o'clock in the morning of Sunday, the 13th day of October,
1907; that it was the intention of the Tillamook Lumbering Company at the
time of the fire to continue to run both the lumber mill and electric light plant

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

in the future in all respects as they had been run in the past; that at the time of the fire no watchman nor any person acting in such capacity was on duty about the premises of the Tillamook Lumbering Company, nor had there been any such watchman or person on duty for several hours prior thereto, nor on any other Sunday during the life of the policy."

By the record the sole question presented is whether the fact that there was no watchman on duty at the time of the fire on Sunday morning, October 13th, avoided the policy.

We are clearly of the opinion that it did not.· It is not doubted that a breach of the warranty would have avoided the policy, but we do not think it can be fairly said by any one that a lumber mill and its incidental lighting plant which continued to be run, up to the time of their destruction by fire, in the same way they were being run at the time they were insured, that is to say, the mill during the six working days of each week, and the electric plant every night, and concerning both of which it was the intention of the owner to continue their operation in the future as they had been operated in the past, were "idle or inoperative" when destroyed; in other words, that they were in a state of disuse. We do not think those words can be fairly construed to mean the customary suspension of the work of the mill on Sundays, or the nonuse of the electric plant in the daytime.

The contention of the plaintiff in error is thus stated by its counsel in their brief:

"This plant was 'idle or inoperative' within the meaning of this clause when it was not running or operated on Sundays or at night. Defendant contends that when this 'steam sawmill, its engines, sawmill, and electric machinery' ceased to operate at 6 o'clock Saturday evening, October 12, 1907, and when all the employés, superintendents, or other agents, and when all the officers, had left the mill and premises, and when no watchman or other person acting in that capacity remained or was 'kept on duty' from that time or at any time, and a fire occurred in the mill about 9 o'clock on Sunday morning, October 13, 1907, 'completely destroying all the property insured,' under these circumstances the 'steam-power, wet-log sawmill, * * * with engines, sawmill machinery, and electric machinery,' constituting a single plant, was necessarily idle or inoperative—one or both is immaterial—and that the failure to keep 'on duty a constant day and night watchman' was a breach of the warranty, and that thereby the policy was forfeited."

That such is not the true construction of the clause in question is, we think, further shown by the clause immediately following it, to wit:

"And provided that if such property be idle or shut down for more than thirty days at any one time, notice must be given this company and permission to remain idle for such time must be indorsed hereon, or this policy shall immediately cease and determine."

There is nothing to indicate that the word "idle" was used in different senses in the two clauses. On the contrary, it seems to us manifest that it was used in the same sense in each clause; that is to say, to indicate a state of disuse, a shutting down or suspension of the works.

These views find support in the cases of Mackintosh v. Agricultural Fire Insurance Company, 150 Cal. 440, 89 Pac. 102, 119 Am. St. Rep. 234; Mackintosh v. American Fire Ins. Co., 150 Cal. 453, 89 Pac. 107; Central Montana Mines Company v. Fireman's Fund Insurance Company, 92 Minn. 223, 99 N. W. 1020, 100 N. W. 3; Poss v. Western Assurance Co., 7 Lea (Tenn.) 704, 40 Am. Rep. 68; Waukau Mill-

ing Co. v. Citizens' Mut. Fire Ins. Co., 130 Wis. 47, 109 N. W. 937, 118 Am. St. Rep. 998; Rosencrans v. Insurance Co., 66 Mo. App. 352; City Planing & Shingle Mill Co. v. Insurance Co., 72 Mich. 654, 40 N. W. 777, 16 Am. St. Rep. 552; Brehm Lumber Co. v. Svea Ins. Co., 36 Wash. 520, 79 Pac. 34, 68 L. R. A. 109, cited in the opinion of the court below.

Having given careful consideration to the elaborate brief of counsel for the plaintiff in error, we see no good reason to interfere with the judgment of the trial court.

The judgment is affirmed.