**Fitzsimmons-Kreider Milling Company, Appellee, v. Ohio Millers Mutual Fire Insurance Company, Appellant.**

INSURANCE—*when provision as to watchman waived.* Knowledge upon the part of inspectors of an insurance company is the knowledge of such company and if with knowledge that the clause requiring the keeping of a watchman is not being observed the com-

pany accepts premiums, it is estopped to urge the nonobservance of such provision as a defense to an action upon a policy.

Assumpsit. Appeal from the Circuit Court of Morgan county; the Hon. OWEN P. THOMPSON, Judge, presiding. Heard in this court at the May term, 1910. Affirmed. Opinion filed October 18, 1910. *Certiorari* denied by Supreme Court (making opinion final).

KIRBY, WILSON & BALDWIN and BARGER & HICKS, for appellant.

BELLATTI, BARNES & BELLATTI and THOMAS BATES, for appellee.

MR. PRESIDING JUSTICE PUTERBAUGH delivered the opinion of the court.

This is an action in assumpsit upon a fire insurance policy issued by appellant to appellee on December 1, 1905, insuring appellee in an amount not to exceed $5,000 for the term of five years. The property covered by the policy was a milling plant belonging to appellee, located at Jacksonville, Illinois, which was destroyed by fire on Sunday, April 18, 1909, about eleven o'clock in the forenoon, while in the possession of Goebel & Burr, lessees of appellee. This appeal is prosecuted to reverse a judgment rendered upon the trial against the defendant for the sum of $4,040.80.

The declaration sets out the policy in *haec verba,* and contains the usual averments of the destruction of the property, notice thereof, the furnishing of proof of loss, and the refusal of the defendant to pay the same. The policy contains provisions to the effect that it should be void if, without the written consent of the insurer, the mill in question should cease operations for a period exceeding sixty days at one time. The policy, the by-laws of the company printed thereon, and the application for the policy, also contain an express warranty that the insured should keep a watchman on duty in the mill at all times when the machinery was not in operation for any cause, except that such watchman might be relieved from duty

in the day-time while other employes were on duty and actually in the building on the premises; that such watchman should use a watchman's time detector with at least one station on each floor of the buildings and engine and boiler house, and that he should be required to make hourly rounds at each watch clock station while on duty, and that records of the same should be dated, filed and kept for inspection of insurance inspectors in periods of at least ninety days. The defendant pleaded *non-assumpsit,* with a notice that it would interpose as special defenses, first, the failure of the plaintiff to keep a watchman on duty on Sundays and holidays, and second, that said mill ceased operations for a period of sixty days preceding the fire, contrary to the terms and conditions of the policy.

The evidence shows the issuance of the policy, the application and by-laws containing the warranty referred to; the destruction by fire of certain of the property described in the policy; the subsequent adjustment of the pecuniary loss occasioned thereby, and the furnishing of proper proofs thereof. The evidence on the part of appellant tended to show that Goebel & Burr shut down the mill about January 1, 1909, and transferred their milling operations to another plant; that thereafter the mill was not in operation, except for a few days in January, the last time for about two days, the 29th and 30th of January, at a time when the power installed at the new plant was out of order; that no flour whatever was ground in the mill after the first of January, the operation thereafter during January being confined solely to the blending of flour into grades and grinding small quantities of corn meal and feed; that thereafter, until the time of the fire, Goebel & Burr, the lessees of the mill, kept their office in and retailed flour, meal and feed from the mill building. The evidence further shows that after the 30th day of January, the machinery of the mill was

Fitzsimmons-Kreider M. Co. v. Ohio M. M. F. I. Co., 158 Ill. App. 174.

not operated, except on February 22, when some corn meal was ground, and that with the exception of this occasion, the mill was not run on Sundays or holidays at any time after the issuance of the policy, nor was there on such days any employe of the mill on duty and in the buildings on the premises, but that on all other days a watchman made hourly rounds in the building at night, punching a watch clock kept for that purpose, to indicate the time of making said rounds; but that on Sundays and holidays when the mill was not in operation, he left the mill about six o'clock each morning and did not return until six o'clock in the evening; that during the interim there was no employe of the mill on duty or in the buildings, and that such was the condition on the Sunday forenoon when the fire occurred.

There was some conflict as to whether or not the mill was operated on the 22nd of February. We think the greater weight of the evidence tends to show that it was so operated within the meaning of the policy. Ins. Co. v. Cotton Mfg. Co., 125 Ill. 131; Ladd v. Ins. Co., 42 N. E. 197.

Upon the trial appellee contended, and still insists, that appellant is estopped from taking advantage of the alleged violation of the clause in the policy which required a watchman to be on duty in the day time, for the reason that it assessed against, demanding and accepted from appellee the premiums provided for by the policy, with full knowledge that appellee was not keeping a watchman on duty in the day time. Upon this issue there is evidence tending to show that there was kept upon the premises a clock containing a paper dial; that each hour during his rounds, the watchman punched a hole in such dial by inserting a key in the clock; that each morning a new dial, upon which was stamped the date, was placed in the clock, and that the used dials were filed and exhibited to different inspectors representing appellant, who visited the

Fitzsimmons-Kreider M. Co. v. Ohio M. M. F. I. Co., 158 Ill. App. 174.

premises at intervals of about every three months; that such inspector at each visit was shown and examined the dials which had been used in the clock since the last visit; that as each inspector visited the premises he presented a card to appellee upon which was printed his name, and that of each of the insurance companies represented by him, of which appellant was one, and that shortly after his visit and examination of the dials, appellee received a letter from appellant stating that such inspector had made his report; that on several occasions it suggested certain changes to be made in the surroundings and conditions of the mill, but that at no time did it criticise the manner in which the watchman performed his duties or request that the system followed be changed.

Appellant thus recognized the authority of the inspectors to represent it and the knowledge of such inspectors must be held to be that of the company. We therefore conclude that the jury was warranted in finding that during the time the policy in suit and prior policies were in force, the company had knowledge of the fact that the watchman clause was not being strictly complied with; that appellee did not keep a watchman on duty during the day time, but that it did keep a watchman upon the premises continuously from six o'clock in the evening until six o'clock in the morning. The evidence further shows that upon the execution and delivery of each of the policies in question, appellee paid to appellant a certain sum in cash and executed and delivered to it what was called a premium note for a certain other additional sum; that semi-annually appellant made an assessment upon such premium note for the premiums which had accrued on the policies, and then drew drafts upon appellee for the amount of such assessment, which drafts were accepted and paid by appellee, and that such had been the custom for a number of years.

"An insurance company that knowingly takes a

premium for a policy under conditions that would render it invalid, will not be permitted to say that it is not a binding contract for that reason. In all such cases the company will be regarded as having the same knowledge of the conditions and situation of the property, as possessed by the agent transacting the business for it. This view of the law has frequently received the sanction of this court in its previous decisions.'' Germania Ins. Co. v. Hick, 125 Ill. 361; Ins. Co. v. Olmstead, 68 Ill. App. 111; Ins. Co. v. Steiger, 26 Ill. App. 228; Ins. Co. v. Jones, 62 Ill. 458; Ins. Co. v. Klewer, 129 Ill. 599; Ins. Co. v. Pacaud, 51 Ill. App. 252.

Under the facts above detailed and the authorities cited, we are of the opinion that appellant having with full knowledge of the facts, permitted the policy in suit to remain in force, and having demanded, collected and retained several premiums thereunder, is now estopped to assert that the policy was void because of the violation of the watchman clause. In this view of the case it will be unnecessary to determine whether or not the statements, conduct and requirements of the adjuster representing the appellant, prior to and during the progress of the adjustment of the loss, constituted a waiver of the breaches of the contract of insurance.

The judgment of the Circuit Court is affirmed.

*Affirmed.*