[No. 5296. Decided January 3, 1905.]

THE BREHM LUMBER COMPANY, *Appellant,* v. THE SVEA

INSURANCE COMPANY, *Respondent.*[1]

INSURANCE—CONDITIONS OF POLICY—CONSTRUCTION—WARRANTY AGAINST IDLENESS OF PLANT FOR MORE THAN THIRTY DAYS—EVIDENCE—SUFFICIENCY. A clause in a policy of fire insurance upon a shingle mill providing that the policy should be void if the property should be idle or shut down for more than thirty days, refers to the stopping of the machinery by which the manufacture is effected; and the policy is vitiated where no shingles are cut and no steam is generated in the boilers for more than thirty days, notwithstanding the fact that shingles are placed in the dry kiln to air dry and are shipped therefrom, or that bolts were brought down ready for manufacture during said period, and such acts do not constitute partial operation of the property.

SAME—INCREASE OF RISK. Where, in answer to questions, an application for insurance upon a steam shingle mill enumerated, as the facilities for extinguishing fires, certain apparatus that could be operated only when fires were under the boilers and steam was up, a clause, conspicuously attached to the policy, providing that the insurance should be void if the property was idle or shut down for more than thirty days, is a reasonable provision to be enforced as any other contract, and, with evidence of idleness, supports a defense that the risk had been increased without the company's consent.

INSURANCE—SEPARATE VALUATION CLAUSES—DIVISIBILITY OF CONTRACT—BREACH OF CONDITIONS AFFECTING ENTIRE RISK. Where, in violation of a clause that the property shall not be shut down, the omission to keep steam in the boilers of a steam shingle mill rendered useless the fire apparatus mentioned in the application, and affected the whole risk, the contract can not be considered divisible by reason of the fact of separate valuation clauses and separate items of insurance upon the mill, the engines and boilers, machinery, dry kiln and pipes, and stock on hand, all in proximity thereto and connected therewith, and if the policy is void as to part it is void as to the whole.

[1]Reported in 79 Pac. 34.

Appeal from a judgment of the superior court for Pierce county, Huston, J., entered May 7, 1904, upon granting a nonsuit, after a trial before the court and a jury, dismissing an action upon a policy of fire insurance. Affirmed.

*F. S. Blattner* and *Harvey L. Johnson,* for appellant.
*Reynolds & Griggs,* for respondent.

HADLEY, J.—This action was brought to recover for loss by fire in appellant's shingle mill and plant. Respondent, an insurance company, had issued a policy of insurance upon said property in the sum of $1,500. There are several defenses, but the chief one is that the property had been idle or shut down for a period of more than thirty days prior to the fire, without permission of the respondent, and in violation of the terms of the policy. Another defense is that, after the policy was issued, the hazard was increased without the consent of the respondent, and in violation of the terms of the policy. The cause was tried before the court and a jury, and, when all the testimony had been introduced, the respondent moved the court to discharge the jury and direct that judgment of nonsuit on the merits should be entered in favor of respondent. The jury was discharged upon said motion, and thereafter judgment was entered, dismissing the action at appellant's costs and also, adjudging that the said policy of insurance is null and void, and that appellant shall surrender the same to respondent for cancellation, upon payment by the latter to the former of $111.33, on account of returned premium. This appeal is from the judgment.

As has already been intimated, the chief controversy here is as to whether the policy was rendered void prior to the fire by reason of the insured property having been

idle or shut down for a period of more than thirty days without respondent's consent.   The policy contains the following provision:

"Warranted by the assured  .  .  .  that if such property be idle or shut down for more than thirty days at any one time, notice must be given thi⁅ company and permission to so remain idle for such time must be indorsed hereon or this policy shall immediately cease and determine."

It is neither contended that any notice of a shut down was given respondent, nor that the latter gave its consent thereto.   It is admitted that the fire occurred on the 24th day of July, 1903.   The evidence conclusively establishes that no shingles were cut at the mill after June 6, 1903, and the manufacturing machinery was entirely idle from that date until the time of the fire.   Some fire was kept under the boilers, and steam was forced through the pipes of the dry kiln until June 20, but, from and after the latter date, no steam was generated on the premises for any purpose, the dry kiln pipes not even being heated.   It will be observed that more than thirty days elapsed after either date, before the fire occurred, and the question to be determined is whether the property was "idle or shut down," within the meaning of the policy, during a full thirty-day period which had elapsed preceding the fire.

The evidence shows that, during that time, shingles were repeatedly shipped from the mill, and were taken from the dry kiln for that purpose.   It is urged that the property was not idle or shut down, for the reason that appellant was engaged in getting bolts down to the mill for manufacture, and was selling and shipping shingles. There is, also, evidence to the effect that some shingles were placed in the dry kiln, but no steam was used to dry

them, they being left to "air dry." The above comprehends all that was done about the mill and insured property for more than thirty days before the fire. Certainly, the getting of shingle bolts down to the mill, ready to be manufactured, was, in no sense, the operation of the insured property; and, if the property was not idle or shut down, it was because shingles were shipped from the premises, and some were placed in the dry kiln. We think the words used in the policy must be given their ordinary meaning, when considered in relation to the subject matter covered by the policy. The insurance was upon a manufacturing plant, and the words "shut down," as commonly used in relation to such plants, refer to the stopping of the machinery and the mechanism in general by which the manufacture is effected. The word "idle" is likewise used with the same significance. An occasional shipment or handling of shingles, the mere output of the plant, we think cannot be said to include the idea of activity in the movement of the manufacturing appliances, which was evidently intended by the words used in this policy.

In ordinary policies, a similar provision is inserted in regard to notice and consent with reference to the vacation of the property pending the insurance period. But the provision in this policy refers to more than the mere lack of occupancy. The reasons for the provisions are obvious. It is well known that such a risk as this one is extra hazardous, and, with that fact in view, before making this contract of insurance, the respondent asked appellant certain questions in writing. These were answered in writing by appellant, along with its application for insurance. Among other things, appellant was asked as to the existence and number, upon the premises, of

force pumps, hydrants, and other facilities for extinguishing fire—apparatus which could be operated at that place only when fires were under the boilers, and when steam was in readiness to be applied to its operation. The answers disclosed the existence of such facilities upon the premises; and, under the terms of the application, these answers, with others, constituted the warranty on which the contract of insurance was based. It is manifest, therefore, that respondent expected these facilities to be available for use in the event of fire. It knew that they could not be available if the plant were shut down, and it therefore provided that a shut down for more than thirty days without notice to it, and without its consent, should determine its risk, and avoid the policy. The provision is a reasonable one, and, having been plainly and deliberately agreed upon by the parties, it should be enforced, as any other contract provision. This portion of the policy was not included in the ordinary printed matter, but was made a special provision by way of a typewritten slip, attached to the face of the policy in such a conspicuous place that appellant should not have overlooked the fact that it must have notified respondent of the shut down, and obtained its consent, if it expected to keep the policy in force beyond the thirty days. The evidence shows that some other companies carrying concurrent insurance upon this property provided for a sixty-day limit for a shut down, but this company provided for only thirty days, and it was so agreed by the insured when it accepted the policy.

Appellant first assigns that the court erred in denying its motion to strike certain portions of the second affirmative defense, for the alleged reason that respondent offered no evidence in support thereof. That defense is one to which we have already alluded, and is to the effect

that, after the policy was issued, the hazard was increased without the consent of respondent. We think the evidence to which we have already referred was in support of that defense, and it was, therefore, not error to refuse to strike the allegations.

The principal error assigned is that the court discharged the jury, and rendered judgment as hereinbefore stated. Appellant contends that the contract was an entire one, covering the entire property, and that, to defeat recovery, it must be shown that the entire property was idle or shut down. The policy specifies the mill building, the engines and boilers, fixed and movable machinery, the dry kiln, including piping, fixtures and connections, and also stock of logs, shingles and shingle bolts in process of manufacture, and upon the premises. Five separate amounts are named in the policy for as many separate items, aggregating $1,500. We do not understand appellant to claim that the policy may be divisible or enforcible as to part, and void as to part, but rather that unless the entire property insured was shut down, the entire policy is enforcible. As to whether the property was shut down, the evidence shows that the only claim of continued operation that is seriously asserted is as to the dry kiln. That item is, however, described in the policy as including piping, fixtures and connections. The pipes were connected with the boilers, and could not be operated for the purposes intended without steam in them, and without fire under the boilers to effect its creation. The dry kiln, as a dry kiln, was, therefore, as completely shut down as was the remainder of the plant. Nothing was done about it but to move shingles into and out of it, chiefly the latter. In *McKenzie v. Scottish U. & N. Ins. Co.,* 112 Cal. 548, 44 Pac. 922, the same question was involved as here. It was claimed that the mill

was not shut down as long as lumber was shipped from the premises. The court observed: "It would be but little more unreasonable to say that a train standing at a station had not stopped because freight was being delivered from the cars." The above remark is peculiarly apt as applied to the claim that the dry kiln in this case was not shut down because shingles were merely moved out of it and into it. The shut down covered the entire property, and we need not, therefore, discuss the authorities cited by appellant on the subject of partial occupancy or operation. Moreover, if this policy be viewed as a divisible one, under its separate valuation clauses, it is nevertheless true that the dry kiln and stock of shingles and bolts upon the premises, for reasons already stated, were in such proximity to the main property and so connected with, and related to, that which was customarily in a state of activity, as made the omission to keep steam in the boilers affect the whole risk covered by the policy as an entirety. In such a case, if the policy is void as to part, it is void as to the whole. It was so held in the recent case of *Republic County Mut. Fire Ins. Co. v. Johnson* (Kan.), 76 Pac. 419. After carefully reviewing the authorities upon the subject of entirety of premium, and divisibility of policies, the court said:

"Therefore, although a policy of insurance so written as to place separate valuations upon separate subjects of insurance will ordinarily be severable, it will not be so unless it can be said that the risk intended to be excluded by a violated condition of the policy did not affect the item of property for the destruction of which a recovery is sought. Although courts are diligent to prevent forfeitures, they may not entirely subvert the contracts of parties deliberately made in an effort to do so."

The above case and authorities there discussed emphatically support the view that, under the circumstances in the case at bar, the risk is not divisible.

Certain cases are cited in support of appellant's contention that the question of shut down or idleness should have been submitted to the jury. The first is that of *Rockford Ins. Co. v. Storig* (Ill.) 24 N. E. 674. The question in that case was whether the building was vacant or occupied. The statement of the case shows that it had been frequently used, and that, between the fifth and twelfth of January, the day the building was burned, two washings and ironings were done therein. Certainly there was evidence there for the jury.

In *Home Ins. Co. v. Wood,* 47 Kan. 521, 28 Pac. 167, it was also claimed that the dwelling house was vacant, but the opinion shows that "the furniture and household goods were still in the building when the fire occurred, though they were being packed in some of the rooms of the house so as to make vacant other rooms therein; that Wood had slept in the house until within a week or five days of the fire, and then went to Ford's to sleep because he was not well; that he was at the house each day while he slept away, and was there until evening the night of the fire." Such evidence as to occupancy was properly submitted to the jury. The matter of occupancy does not necessarily involve a continuous bodily presence upon premises, and is largely coupled with intent. Under the circumstances detailed in the above case the question was peculiarly for the jury.

In *Des Moines Ice Co. v. Niagara Fire Ins. Co.,* 99 Iowa 193, 68 N. W. 600, the question of vacancy arose. The building was an ice house. At the time of the fire, there was yet a small quantity of ice in the building, but it was not merchantable. All the tools used in putting

up ice were stored in the building, and remained there until it was burned. Thus the matter of occupancy was properly submitted to the jury. The last case cited by appellant upon this point is *White v. Phoenix Ins. Co.,* 83 Me. 279, 22 Atl. 167. It was there held that mere vacancy of property does not avoid a policy in that state, unless it is further shown, as a fact, that the risk is increased, and. it was further held that the insurance company should have been permitted to count the presumption of increased risk from vacancy in its favor, or to show facts tending to prove it. The holding that mere vacancy did not avoid the policy, unless the risk was increased, was based upon a statute in Maine as follows: ". . . a change in the property insured, or in its use or occupation, or a breach of any of the terms of the policy by the insured, do not affect the policy unless .they materially increase the risk, . . ." Revised Statutes of Maine, 1883, ch. 49, § 20. That contract with reference to vacancy was made in the state of Maine with that statute in view, and was governed by it.

We are not aware of any statute in this state which prevents stipulations in an insurance contract as to vacancies and shut downs from being enforced as strictly as any other ordinary contract provision.

It will thus be seen that the cases cited by appellant to the point that the question of shut down or idleness, in the case at bar, was for the jury, are all cases involving the matter of vacancy; and it must be conceded that circumstances which may establish the fact of occupancy may be wholly insufficient to establish that a manufacturing plant has been in operation, and has not been shut down. Occasional absence from premises does not necessarily terminate occupancy, but absolute silence of the mechanism and appliances of a manufacturing plant,

when indisputably shown by evidence, establishes the fact that it is shut down, and leaves no question for the jury. *McKenzie v. Ins. Co., supra,* involved facts almost identical with those in the case at bar, and it was held that the trial court should have found, as a matter of law, that the stipulation in the policy was violated, and should have granted a nonsuit. Facts equally as identical with those at bar were shown in *Cronin v. Fire Assn.,* 123 Mich. 277, 82 N. W. 45, and the court held that the trial court would have been warranted in saying to the jury that the undisputed evidence established the fact.

The court, therefore, did not err in withdrawing this case from the jury, and the judgment is affirmed.

FULLERTON, C. J., and DUNBAR, ANDERS, and MOUNT, JJ., concur.