## BOATNER v. PROVIDENCE–WASHINGTON INS. CO. (No. 298–3604.)*

(Commission of Appeals of Texas, Section B. May 24, 1922.)

1. **Insurance** ⬅336(1) — **Warranty against concurrent insurance not within purview of anti-technicality statute.**

Violation of warranty against concurrent insurance is not rendered nugatory by Vernon's Sayles' Ann. Civ. St. 1914, art. 4874a, the anti-technicality statute.

2. **Insurance** ⬅665(3) — **Evidence sustained finding that insured procured additional binding insurance.**

In an action on policies providing against additional insurance, evidence *held* to sustain finding that insured procured additional binding insurance.

3. **Insurance** ⬅136(2)—**Delivery constructive as well as actual.**

While delivery is an essential element of an insurance contract, it can be constructive as well as actual.

4. **Appeal and error** ⬅882(3)—**Appeal limited to trial theory.**

Litigants cannot assume an attitude on appeal inconsistent with that taken at the trial, and are restricted to the theory upon which the cause was prosecuted or defended in the court below.

5. **Appeal and error** ⬅882(3)—**Insured urging policy valid at trial cannot claim as void on appeal.**

Where at trial of an action on an insurance policy insured urged that a policy of additional insurance was valid, he cannot on appeal insist that it was void.

6. **Insurance** ⬅141(4)—**Where insured sues on policy, it is an election to stand on it.**

Where insured arranged with insurer's agent for his insurance and to get credit for the premium, and after loss secured the policy and presented claim thereunder to the insurer under oath, and, failing to secure payment or recognition, sued on the policy and prosecuted the suit to judgment, he elected to stand on such policy, by which action and conduct he must conclusively be bound.

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Rehearing denied June 21, 1922.

7. Insurance ⬡➾336(7)—Insurance policy on stock and fixtures void because of overinsurance as to the stock; void also as to the fixtures.

$3,250 policy on stock and fixtures was so itemized as to distribute $2,500 thereof on the stock and the remaining $750 on the fixtures. It was issued for one gross premium, and provided that the entire policy should be void if insured procured additional insurance on any part of the property described. *Held*, that the policy was indivisible, so that a breach of the additional insurance clause as to the stock invalidated the policy not only as to the $2,500 on the stock, but also as to the $750 on the fixtures.

8. Insurance ⬡➾309—When breach of condition avoids whole policy stated.

Though insurance is distributed to the different items of insured property, the contract is indivisible if its breach as to one item of the property affects, or may reasonably be supposed to affect, the other items by increasing the risk thereon.

9. Costs ⬡➾261—Court's discretion not abused in refusing to award damages for failure to pay or tender loss.

In view of Rev. St. art. 1627, investing appellate court with discretion to include in an affirmed judgment such damages not exceeding 10 per cent. as the court may deem proper, where an insured elected to sue on policies part of which were void, the refusal to award additional damages on a policy which the insurer admitted was not an abuse of discretion.

Error to Court of Civil Appeals of Fourth Supreme Judicial District.

Suit by R. H. Boatner against the Providence-Washington Insurance Company and others. From judgment of the Court of Civil Appeals (225 S. W. 1115) reversing judgment for plaintiff, plaintiff brings error. Affirmed.

Kleburg, Stayton & North, of Corpus Christi, and Atkinson & Atkinson, of Houston, for plaintiff in error.

S. A. Early, of Corpus Christi, and Locke & Locke, of Dallas, for defendants in error.

POWELL, J. In 1915 and 1916 R. H. Boatner was engaged in the mercantile business in the town of Robstown, Tex., and occupied his own store building and adjoining warehouse. He finally acquired a total fire insurance protection amounting to $11,-250. In 1915 he secured two policies in the Home Insurance Company on the building, said policies aggregating $3,000. This insurance was payable, as per rider indorsed thereon, to the party who had built his store. These two policies were in litigation, and the opinion of the Court of Civil Appeals at San Antonio in that case can be found in Home Ins. Co., v. Boatner (Tex. Civ. App.) 218 S. W. 1097. The judgment of the Court of Civil Appeals was affirmed by the Supreme Court recently upon recommendation

of this section of the Commission of Appeals. 239 S. W. 928.

The facts just above given are presented for the purpose of clearing up the situation and to show that the policies aforesaid on the building are entirely separate from the policies involved in the case at bar.

Coming now to the four policies of insurance which are involved in the instant case, we find he procured them as follows:

(1) On May 24, 1915, a one-year policy in the Providence-Washington Insurance Company for $1,000 on stock of merchandise. In that policy no concurrent insurance was allowed.

(2) On April 19, 1916, a one-year policy in the Home Insurance Company for $3,000 on stock of merchandise. This policy allowed a total of $4,000 as insurance on the stock.

(3) On April 20, 1916, a one-year policy in the Providence-Washington Insurance Company for $2,500 on the stock of merchandise and $750 on store fixtures. This policy permitted a total insurance of $3,500 on the stock of goods and $750 on the furniture and fixtures in the building.

(4) On April 20, 1916, a one-year policy in the Providence-Washington Insurance Company for $1,000 on the store building. This policy permitted a total of $4,000 insurance on the building.

About midnight on May 3, 1916, the store and stock were completely destroyed by fire. At that time, as shown above, he had a total of $4,000 of insurance on his building, $750 on his fixtures, and $6,500 on his stock of goods. It will be remembered that this last-named amount is just $3,000 more than the Providence-Washington Insurance Company permitted him to carry, and $2,500 more than the Home Insurance Company allowed him to procure.

Boatner, in due course after the fire, presented his claim to each of said insurance companies, seeking payment on all four policies involved in this suit. Payment being refused by the companies, he filed four separate suits in the district court of Nueces county. Two were commenced on August 17, 1916, and the other two were begun four days later. They were all filed almost as soon as they could be instituted under the terms of the policies.

When the cases were called for trial, counsel for Boatner made formal motion that the three cases against the Providence-Washington Insurance Company be consolidated. There was no objection on the part of defendant company, and the consolidation was ordered. Following that there was an agreement that the consolidated Providence-Washington cases and the one against the Home Insurance Company be tried together as one case, before the same jury, under the same charge of the court, upon the same facts,

and under the pleadings in each case; that there should be but one transcript and 'one statement of facts upon appeal. Full faith was accorded· said agreement in the trial court and Court of Civil Appeals. The trial judge referred to the cases as "this, cause" in charging the jury. We shall give the same faith and credit to the agreement here, and consider, as affecting either of the companies, all the pleadings and facts shown in the transcript and statement of facts before us, just as did the Court of Civil Appeals. The attorneys for all parties had the right to rely upon this agreement and were not required to introduce any facts or pleadings twice. The agreement was made in the interest of economy of time and expense, and, in its practical effect and working in both the trial court and the Court of Civil Appeals, the result was the same as if there had been entered a formal order consolidating the Home Insurance case with the other consolidated cases. The agreement in the transcript so shows.

The allegations in the various petitions were typical of their kind in a suit for recovery on a fire insurance policy. It is not necessary to go into the pleadings of any of the parties except to say that the insurance companies pleaded, except in the one· case hereinafter mentioned, that Boatner was precluded from any recovery on the policies because of a breach of the following provision contained in each of the policies, to wit:

"This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if the assured now has or shall hereafter make or procure any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy."

The answer of the defendant company in the one case excepted above was merely a general demurrer and a general denial. This answer was to the petition seeking recovery upon the $1,000 policy issued by the Providence-Washington Insurance Company on the store building.

The attorneys for Boatner, by exception and answer in all the contested cases, pleaded that above provision of the policy was precluded and rendered nugatory in these cases by article 4874a of Vernon's Sayles' Revised Statutes of Texas of 1914, commonly known as the "anti-technicality statute." The trial court adopted this contention of counsel for Boatner and decided that the companies were liable, so far as the provision of the policies above quoted was concerned. He decided this question himself and did not submit it to the jury. The trial was before a jury on special issues, but the court submitted only three such issues. In response to these questions, the jury found that Boatner had substantially complied with the "iron-safe clause" contained in the policies; that the value of the stock of merchandise was

$6,500; that the value of the office furniture and fixtures was $1,050.

At the conclusion of the evidence, counsel for the insurance companies requested peremptory instructions in favor of the latter upon all policies in suit, save and except the one issued for $1,000 on the building by the Providence-Washington Company. As to the latter, counsel admitted liability at the conclusion of the testimony. The court refused these peremptory instructions so requested by the companies.

Upon the findings of the jury, his own construction of article 4874a of the statutes aforesaid, and the undisputed facts, the trial court entered, upon proper request of Boatner, judgment in the latter's favor against the Providence-Washington Insurance Company for $4,750.13, and against the Home Insurance Company for $3,124.60. In that way the court held all the policies in the suit as fully valid and binding.

The companies carried the case to the Court of Civil Appeals at San Antonio, where the judgment of the trial court was reversed, and judgment rendered that Boatner recover nothing as against the Home Insurance Company, and that he recover of the Providence-Washington Insurance Company the sum of $1.000 admitted by it to be due under its policy on the building. See 225 S. W.. 1115.

Boatner applied for and secured a writ of error from the Supreme Court, and the cause is now before us for review and recommendation.

Counsel for Boatner, in their motion for rehearing in the Court of Civil Appeals, acquiesced in the rendition by the latter court of a judgment in favor of the Home Insurance Company. For the first time during this litigation they then and there abandoned their vigorous efforts to recover under the Home Insurance Company policy. So,·as to that portion of the judgment of the Court of Civil Appeals, there is nothing before us.

It is also true that the counsel for the Providence-Washington Insurance Company accepted the judgment of the Court of Civil Appeals awarding Boatner a recovery of $1,-000 on the policy it had issued on the building.

Consequently the only issues confronting us are involved in the action of the Court of Civil Appeals in denying Boatner any recovery under the $1,000 policy on the stock of goods issued by the Providence-Washington Insurance Company or under the $3,250 policy issued by the latter company, distributed $2,500 on the stock and $750 on the furniture and fixtures. Did the Court of Civil Appeals so decree correctly? The answer to this latter query depends upon the defensive provision in said policies already quoted, and which prohibited the taking out of additional or overinsurance.

[1] The Court of Civil Appeals correctly

(241 S.W.)

held that the violation · of the warranty against concurrent insurance is not rendered nugatory by article 4874a of Vernon's Sayles' Revised Statutes of Texas of 1914. In the case of Philadelphia Underwriters' Agency v. Driggers (Tex. Civ. App.) 238 S. W. 633, our Supreme Court, speaking though Chief Justice Cureton, construing said statute, says:

"This act has reference only to those war-· ranties and provisions in policies the breach of which might contribute to or bring about a fire loss. McPherson v. Camden Fire Insurance Co. (Tex. Com. App.) 222 S. W. 211; Providence-Washington Insurance Co. v. Levy & Rosen (Tex. Com. App.) 222 S. W. 216; Ætna Insurance Co. v. Waco Co. (Tex. Com. App.) 222 S. W. 217; Merchants' & Mfrs.' Lloyd's Ins. Exch. v. Southern Trading Co. (Tex. Com. App.) 229 S. W. 315; Humphrey et al. v. National Fire Insurance Co. (Tex. Com. App.) 231 S. W. 750.

"The clauses in the policies sued on, to the pleading of which by appellants exceptions were sustained, are not within the purview of this act. A violation of these provisions manifestly could not contribute to or bring about the destruction of property by fire. In the case of Merchants' & Mfrs.' Lloyd's Ins. Exch. v. Southern Trading Co., cited above, the Commission of Appeals correctly held that the record warranty clause contained in fire policies in the state of Texas is not affected by the act above quoted."

Two of the cases cited by Judge Cureton were those of Providence-Washington Insurrance Co. v. Levy & Rosen (Tex. Civ. App.) 222 S. W. 216, and Ætna Insurance Co. v. Waco Co. (Tex. Civ. App.) 222 S. W. 217. In those two cases the Commission of Appeals, with the approval of the Supreme Court, held that the policy warranty prohibiting unpermitted concurrent insurance was not within the purview of that act or article of the statute, and also that it was a material provision of a policy, and that it was incumbent upon the insured to comply with its terms.

That there was a breach of this warranty is admitted, provided Boatner procured the $3,000 policy in the Home Insurance Company on his stock of merchandise. If he procured it, then, under the well-settled law of this state, he was not entitled, under any theory, to recover either the $3,000 from the Home Insurance Company on the stock or the $3,500 from the Providence-Washington Insurance Company on the same property.

In that event he had not only violated the provision of the policy hereinbefore quoted, but also that against a certain amount of concurrent insurance. By procuring the Home Insurance policy for $3,000, he had just that much more insurance on his stock than the Providence-Washington Insurance Company's policies permitted. Did Boatner procure this $3,000 policy in the Home Insurance Company on his stock of merchandise?

[2] In this connection, we reach the first assignment of error in the application by Boatner for the writ of error, which is as follows:

"This cause, having been submitted on special issues, and no issue having been submitted or requested as to whether Boatner had made or procured a contract of insurance with the Home Insurance Company, and there being ample evidence to sustain the contention that no such contract had been made or procured, either valid or invalid, the Court of Civil Appeals erred in not deeming such issue, as having been found by the court, in such manner as to support the judgment of the court below, and said court erred in reversing and rendering this cause."

In making reply to this assignment of error, we desire to give a brief history of the state of the record on whether or not Boatner procured this Home policy. On the 19th day of April, 1916, Gouger, as agent for the Home Insurance Company, wrote a $3,000 policy for Boatner on his stock of merchandise. Boatner had gone to his place of business and asked him to write up this insurance. He went so far as to ask the agent for terms on paying the premium and the agent agreed to wait on Boatner for 60 days. The latter testified that he could have paid the premium at that very time and would have done so but for the fact that he thought he had as well get the benefit of the 60 days' time as to permit Gouger to do so. Still further, he testified that he frequently left his policies with the agents of insurance companies and did not see them at all from year to year.

As already shown, Boatner procured the Providence-Washington policies on the next day.

After the fire he made demand upon the Home Insurance Company for payment of the $3,000. Being unsuccessful, he entered suit upon the policy, alleging in his petition that he procured said policy, and that same was duly issued by the company, and that the facts with reference to its issuance by Gouger "constituted delivery to plaintiff." Boatner prayed for judgment on the policy.

Upon the trial of the case Boatner, without objection from any one, introduced the Home policy in evidence, claiming it was valid and binding. He testified that he took out this very policy just before the fire. For instance, we quote from his testimony as follows:

"With relation to the circumstances that caused me to take out the additional $5,500 insurance on the stock [$3,000 in the Home, $2,-500 in the Providence-Washington], I will say there were various circumstances causing me to do it."

Then again he testified:

"As to whether or not I am willing to think it [the Home policy] in existence now, I will say that the insurance company thinks it valid. I myself am perfectly willing to think it valid."

So Boatner pleaded a procurement of the policy. He swore he took it out. The Home Insurance Company admitted in its pleadings and proof the execution of the policy and its validity but for the breach of its provisions aforesaid.

In that state of the record, with all parties pleading, swearing, and admitting the procuring and execution of this policy, we do not wonder that the trial court did not even submit that issue to the jury. It was not necessary. It was proved beyond dispute. It was not even in controversy. He rendered judgment against the Home Insurance Company. He could not have done so had he not found as a fact from the evidence that this policy was issued and binding upon the Home Insurance Company. There was ample evidence to sustain this finding by the trial court. His finding was sustained by the Court of Civil Appeals. We shall not disturb it here.

Therefore we cannot accede to the request of counsel for Boatner that we find that the trial court must have found that the Home Insurance Company policy was not procured and issued. In order to do so, we would be compelled to blind ourselves to the facts in the record which show just the contrary.

[3] Under this record, we submit that Gouger could have done nothing else but write this policy. Any one would have understood that Boatner ordered it. While delivery is an essential element of a contract, it can be constructive as well as actual. Under the custom obtaining then and there, Gouger could well be the agent of Boatner in taking care of his policies in the vaults of the bank where Gouger worked. We think the Home Insurance Company was bound by this policy; that it was a completed contract on April 19, 1916. Boatner thought so when he drafted his petition and testified at the trial. The trial court was clearly justified in holding it valid. The latter made his mistake in construing article 4874a and rendering the warranty in question nugatory.

The finding of the trial court that Boatner did procure a valid policy of insurance from the Home Insurance Company settled the fact, as we see it, that the Court of Civil Appeals correctly held that the companies were not liable for any portion of the $6,500 of insurance on the stock of merchandise. We do not think any further discussion in this connection necessary, but will present one or two more thoughts.

[4] The law forbids the assumption of an attitude on appeal inconsistent with that taken at the trial, and on appeal litigants are restricted to the theory upon which the cause was prosecuted or defended in the court below. This principle of law is well settled. See Gulf, etc., Ry. Co. v. Rainey (Tex. Civ. App.) 23 S. W. 442; Southern Pacific Co. v. Kennedy, 9 Tex. Civ. App. 232, 29 S. W. 394; Chicago, etc., Ry. Co. v. Rogers (Tex. Civ. App.) 160 S. W. 281; Ryle v. Davidson (Tex. Civ. App.) 116 S. W. 823; Penn v. Briscoe (Tex. Civ. App.) 162 S. W. 916; Galveston, etc., Ry. Co. v. Walker (Tex. Civ. App.) 163 S. W. 1038; Panhandle, etc., Ry. Co. v. Vaughn (Tex. Civ. App.) 191 S. W. 142; Craig, Thompson & Jeffries v. Barreda (Tex. Civ. App.) 200 S. W. 868; Binder v. Milliken (Tex. Civ. App.) 201 S. W. 239; Rivers v. Campbell (Tex. Civ. App.) 111 S. W. 190; Miller v. Drought (Tex. Civ. App.) 102 S. W. 469; Burbank v. Bigelow, 154 U. S. 558, 14 Sup. Ct. 1163, 19 L. Ed. 51; New York, etc., Ry. Co. v. Estill, 147 U. S. 591, 613, 13 Sup. Ct. 444, 37 L. Ed. 292; Brown v. Searls (Tex. Civ. App.) 228 S. W. 173.

Corpus Juris states the rule in these words:

"One of the most important results of the rule that questions which are not raised in the court below cannot be raised in the appellate court is that a party cannot, when a cause is brought up for appellate review, assume an attitude inconsistent with that taken by him at the trial, and they are restricted to the theory upon which the cause was prosecuted or defended in the court below."

[5] That Boatner is here attempting a course of action violative of this principle of law there can be no doubt. There is no suggestion of anything from Boatner in the trial court except that the Home policy was valid. He urged it in every way and sought its enforcement. He asked the Court of Civil Appeals to affirm the action of the trial court in enforcing that contract of insurance. Having failed to induce the Court of Civil Appeals to do so, and seeing that the only way to recover on the Providence-Washington policies was by changing front on the Home policy, Boatner now disowns his child, the Home policy, so to speak, and exclaims, "I know you not." We do not think he can be permitted to seriously press any such contention in the Supreme Court. It is too inconsistent, it seems to us, to need any further comment.

But counsel for Boatner urge upon us, by way of equity, that he did not intend to overinsure and should not be penalized. Our answer to this, in the first place, is that men are presumed to intend the reasonable and natural consequences of their action. But, aside from that, the status of Boatner in this regard is absolutely inconsistent, and he is entitled to no relief from his conduct on equitable grounds.

In one part of his testimony, being called upon to explain his conduct in taking out all of this insurance, he stated that he did not knowingly take out the overinsurance and violate the terms of the policies; that, not hearing further from Gouger, after 8 or 10 days, he assumed the policy had not been written; that he then took out the Providence-Washington policies; that he was not claiming the policy issued by the Home Insurance Company and did not know that it existed until after the fire.

The policies themselves show that the one in the Home Insurance Company was written April 19, 1916, and all the others the very next day, and not 8 or 10 days later. But Boatner could have had the jury pass upon this conflict.

Let us look at Boatner's position after the fire, giving faith and credit for the purposes of this discussion to his testimony just above set out. If those had been the real facts, then Boatner would have shown his good faith, upon discovering that the Home policy was written and effective so far as the company was concerned, by advising the agent of the Home Company that the policy was issued by mistake or accident; that he had not intentionally accepted it and was making no claim whatever under it. If the jury had believed this testimony, they doubtless would have set aside the Home policy. But, alas, Boatner took no such consistent position. He did just the opposite. Seeing that he had the Home Company bound, as he construed his rights under the law, he claimed under the policy he said he did not know, until after the fire, he owned. He did this deliberately. In his mind he knew the status of the policies. He knew, if he claimed under all of them, that he would lose all of his insurance, except the $1,000 on the building, unless article 4874a of our statutes should save him. On the other hand, he knew he could collect on all the Providence-Washington policies if he was willing to waive the Home policy and could show such facts to the jury as would justify them in setting the Home policy aside. He had a fair chance to do that under that portion of his testimony now under consideration. But he did not do that. He decided to take the whole loaf, and not half a loaf. He chose his course and went ahead. He followed it until it led him into disaster in the Court of Civil Appeals. Now in this court, being about to lose the whole loaf, he disowns and abandons half of the loaf and begs to be spared the other half. He is in this situation: He wanted to claim the benefits of the Home policy and not be bound by its burdens. He cannot do that. When one takes a contract, he must accept its bitters as well as its sweets. He cannot claim it for one purpose and disaffirm it for another. Boatner went ahead after choosing his battle ground. If he did not intentionally overinsure in the beginning, he at least intentionally tried to enforce overinsurance, and that, too, at a time when he knew its possible consequences. There is no equity in his position. This seems so clear to us that we forego any further remarks in this connection.

[6] We do not think the Home policy was void. It may have been voidable under the circumstances we have outlined. With this exception, we are inclined to agree with the following portion of the opinion of the Court of Civil Appeals in the case at bar:

"It is shown by the evidence that defendant in error made arrangement with the Home Insurance Company's agent for the insurance and to get credit for the premium, and immediately after the fire secured the policy, and presented a claim thereunder to said company under oath, and, failing to secure payment or recognition, brought suit upon said policy and prosecuted it to judgment. By so doing he elected to stand on a void policy, and by which action and conduct he must conclusively be bound. He has selected his battle ground; he has elected his course of action and his remedy, and must suffer the results of the overinsurance. Grizzard v. Fite, 137 Tenn. 103, 191 S. W. 970, L. R. A. 1917D, 652; Jirou v. Jirou (Tex. Civ. App.) 136 S. W. 498; Whitney v. Parish of Vernon (Tex. Civ. App.) 154 S. W. 264; Stinson v. Sneed (Tex. Civ. App.) 163 S. W. 991; Clemenger v. Flesher (Tex. Civ. App.) 185 S. W. 304; McPherson v. Camden Fire Ins. Co. (Tex. Civ. App.) 222 S. W. 211."

[7] We come now to a consideration of the second assignment of error urged by Boatner in the application. It reads as follows:

"The court erred in failing and refusing to affirm so much of the judgment in favor of Boatner as was based on the insurance policy for $750, covering his office furniture and fixtures."

It will be remembered that the policy for $3,250 issued by the Providence-Washington Company was so itemized as to distribute $2,500 thereof on the stock, and the remaining $750 on the furniture and fixtures in the building. Counsel contend that the contract was therefore divisible, and, even though the $2,500 portion of it cannot be enforced, the $750 part is binding. Counsel say that there was no overinsurance on the furniture and fixtures, and therefore that portion of the policy was not breached. This brings up a most interesting question, and one upon which much has been written. In many of its phases quite a conflict of authority is apparent.

The $3,250 policy was issued for one gross premium, and it contained the provision first hereinabove quoted to the effect that the entire policy would be void if the insured procured additional insurance on any part of the property described therein. This provision is clear and free from ambiguity. The $3,250 policy covered the stock, as did the $3,000.00 policy in the Home Company. Therefore Boatner had other insurance on part of the property covered by the former. This provision was violated. There can be no question about it, and the entire $3,250 policy should be held void, unless some reason can be found in law or equity for setting aside the contract made by the parties and proceeding ourselves to make a new one for them. Every court in America, so far as we are advised, does everything in reason to avoid a forfeiture. We are in hearty sympathy with that doctrine. At the same time all courts enforce the plain provisions of a

contract, voluntarily assumed; they being material, and not violative of some statute or contrary to sound public policy. The contract in question does no violence to public policy nor does it run counter to any statute we have in Texas. We think it should be enforced unless it can be said that the over-insurance on the stock could not have affected the risk so far as the furniture and fixtures were concerned, and therefore absolutely immaterial. Bearing this in mind, we now proceed to review some of the authorities relating to this question of the divisibility of an insurance contract. We go into this matter rather fully because the Court of Civil Appeals passed it by without notice.

In the first place, counsel for Boatner cite but one case, that of Ætna Insurance Co. v. Dancer (Tex. Civ. App.) 181 S. W. 772. It is not shown in that case that exactly this same provision was present. Not only so, but the judgment of the Court of Civil Appeals in above cause was reversed and rendered in favor of the insurance company by the Supreme Court on recommendation of the Commission of Appeals. See 215 S. W. 963. It is true that the case was rendered on other grounds than the point we are now discussing. That fact rendered it unnecessary to pass upon the point now at issue. We merely show that the judgment of the Court of Civil Appeals in that case was never approved in any way by the Supreme Court of Texas.

The leading case in Texas upon the divisibility of an itemized fire insurance policy seems to be that of Bills v. Hibernia Insurance Co., 87 Tex. 547, 29 S. W. 1063, 29 L. R. A. 706, 47 Am. St. Rep. 121. In that case the policy provided that the entire contract should be void if the subject of insurance be a building on ground not owned by the insured in fee simple. The policy was for a total of $1,430. Of that amount, the sum of $370 was on the ginhouse, the balance being distributed among the various items of machinery, appliances, etc. In passing upon the question as to whether or not the provision referred to made the policy entire or divisible, Judge Brown says:

"The terms being that the policy shall be entirely void upon a certain state of case, it cannot become void in part in that event. A contract cannot be entirely void and at the same time partially valid. Entirely void means void in toto, in all its parts, and as to all rights claimed under it. We agree with counsel for defendant that the contract is entire, and that, if the facts bring the case within the language of the clause expressing the conditions of forfeiture, it is void as to all the property embraced. Plaintiff has yielded his claim as to the ginhouse, and we shall not discuss the effect upon that except in so far as it is involved in the construction of the words used."

Judge Brown then proceeded to show that the provision was inapplicable to that case because the facts were not within the language of that clause. He said the clause must be construed strictly against the insurance company. In the latter part of his opinion the judge spoke as follows:

"'The subject of the insurance' in this policy was the property insured. This consisted of a building and various other articles of personal property separately valued. In order to sustain the contention of the defendant, we must impart into the clause of forfeiture words to give to it the effect, as if it read thus, 'if the subject of insurance or any part of it be a building,' etc., as in the case of Smith v. Insurance Company, 118 N. Y. 526. The court, however, will not imply anything in favor of a forfeiture, but must try the matter by the language used by the parties."

It is rather evident to us that the suggestion of Judge Brown just above quoted has been adopted by the insurance companies. Under the provision in the policy in suit, Judge Brown's opinion in the Bills Case would have been that the entire policy was forfeited. It is only fair to assume, then, that said case is authority for forfeiting the entire policy now under discussion, if it can be said that overinsurance is of as much importance in affecting an entire risk as is the location of the insured's property on leased grounds. It does not seem to us that this can be seriously disputed. The purpose of both warranties is to prevent fraud. There is a natural temptation to burn property when it is on leased ground, and may not be permanently located there for that reason. Just so there is a natural temptation to burn property when it is heavily overinsured and when a conflagration might result in profit to the owner. The companies have a right to protect themselves in either of these ways, and they have attempted to do so.

Therefore, under authority of Judge Brown's opinion aforesaid, which has never been overruled or modified, at least so far as our last quotation from it is concerned, we think the $3,250 policy was forfeited in its entirety by the heavy overinsurance on the stock, which latter was protected by the policy now before us. In this last quotation Judge Brown refers to the case of Smith v. Insurance Co., 118 N. Y. 526, 23 N. E. 883. This is a very strong case upholding Judge Brown's opinion, and that is true although New York has been rather liberal in holding such policies severable under most clauses and under certain conditions.

Judge Brown could have cited numerous other cases in his last quotation if he had cared to do so. The authorities are almost unanimous in holding that the language used in the policy in suit renders the policy indivisible. For instance, the Supreme Court of Georgia, in case of Insurance Co. v. Gray, 107 Ga. 110, 32 S. E. 948, held such a policy entire and indivisible where additional insurance was taken out on furniture in the store building.

We now desire to refer to the fact that

some of the later Texas cases have apparently modified our first quotation from Judge Brown's opinion. The words "this entire policy" do not seem to render an itemized policy totally void under all .circumstances. Some of the Courts of Civil Appeals have held that, under certain conditions, such policies are severable, and not entire. We shall not refer to many of these cases, but content ourselves by calling attention to two of them. They are typical of most of them, involving a violation of the iron safe or inventory clause.

In the case of Insurance Co. v. Kellner (Tex. Civ. App.) 169 S. W. 636, the Court of Civil Appeals allowed recovery of $1,000 on the store building and $100 on the fixtures, but denied a recovery of $900 on the stock. One policy covered all the items, and it provided that the "entire policy" should become void if the books were not safely kept, etc. The Court of Civil Appeals held, and we think correctly, that the inventories could have had no bearing upon the building and fixtures, but were important only in ascertaining the amount of loss on the stock after the fire, and for that reason could not have affected the building and fixtures. Nor could the breach of the iron safe clause have been an incentive to fraud. The Supreme Court denied a writ of error in the Kellner Case.

In the case of Lloyd's Insurance Exchange v. Southern Trading Co. (Tex. Com. App.) 229 S. W. 312, the Commission of Appeals cited the Kellner Case with approval and based its recommendation as to judgment thereon. The judgment it recommended was approved by the Supreme Court.

In so far as above last two causes have gone, they have followed the authorities in many states. But they do not militate against our view of the instant case that the breach of the provision in the policy in suit was material and affected the entire risk, and therefore voided the entire policy. In fact, we know of no authority which does differ with our conclusion in this respect. We have already reviewed the Texas cases in this connection, and now come to those of other jurisdictions.

[3] This question is ably discussed in the second edition of Joyce on the Law of Insurance, vol. 3, pp. 3165–3185, § 1931. In this admirable work we think the author states the true rule as follows:

"Though insurance is distributed to the different items of insured property, the contract is indivisible if its breach as to one item of the property affects, or may reasonably be supposed to affect, the other items by increasing the risk thereon." See page 3184, vol. 3, of Joyce's work, supra.

The Supreme Court of Wisconsin supports above text in case of Loomis v. Insurance Co., 77 Wis. 87, 45 N. W. 813, 8 L. R. A. 834, 20 Am. St. Rep. 96, when it speaks as follows:

"There is some apparent conflict of authority as to the rules by which it is to be determined whether the contract in a given case, which insures several items of property, is an entire contract, or whether it is divisible. An examination of the cases will show, we think, that as to a large majority of them the conflict is apparent rather than real. All the cases seem to agree that, although the insurance is distributed to the different items of insured property, the contract is indivisible if the breach of the contract as to an item of the property affects, or may reasonably be supposed to affect, the other items, by increasing the risk thereon."

We quote again from Joyce's great work aforesaid (volume 3, p. 3182) as follows:

"In Indiana, where property covered by insurance, although consisting of separate items, constitutes substantially one risk and is necessarily subject to destruction by the same fire, then, even though separate amounts of insurance are apportioned to each separate item or class of property, if the consideration of the contract and the risk are both indivisible, the contract must be treated as entire, and any breach of a stipulation which renders the policy void as to a part affects the other items in the same manner."

The above text finds support by the Supreme Court of Indiana in case of Geiss v. Franklin Insurance Co., 123 Ind. 172, 24 N. E. 99, 18 Am. St. Rep. 324, in the following language:

"The aggregate amount of the policy in the present case was $1,000. This was apportioned in different amounts, over six distinct and separate items or classes of property, more than one-third of the whole amount being upon the soda fountain to which the assured had only a conditional right. It was all exposed to one risk, and the consideration for the policy was a specified sum. The court cannot say that the insurance company would have insured the soda fountain if the true state of the title thereto had been disclosed, nor can we say that it would have insured the other items or classes of property without insuring the soda fountain. The contract was entire and indivisible, and to hold the company liable would be to enforce upon it an obligation which it never entered into. This would be to make an agreement for the parties, rather than to enforce the liability of one of them upon an agreement made by the parties themselves.

"We fully appreciate the unfortunate situation of the assured, but courts of law cannot be made asylums in which every person who has made a mistake can take refuge against his own contract deliberately entered into. Where the validity of the insurance is made to depend upon the assured being the absolute and unconditional owner of the true title of the property insured, a failure to set forth the title with substantial accuracy, renders the policy void, not only as to the property the title to which is not truly represented, but all other property covered by the same policy, and subject to the same risk. This is so even though the owner had no intention to deceive."

The Supreme Court of California has followed this rule in an able opinion in the

case of Goorberg v. Western Assurance Co., 150 Cal. 510, 89 Pac. 130, 10 L. R. A. (N. S.) 876, 119 Am. St. Rep. 246, 11 Ann. Cas. 801. We shall quote from this decision as follows:

First. "There is still another line of cases which take a middle ground between the extreme doctrines above stated and hold that the question of the severability of the contract in such cases depends upon the nature of the risk; i. e. that where the property is so situated that the risk on one item cannot be affected without affecting the risk on the other items, the policy must be regarded as entire; but, where the property is so situated that the risk on each item is separate and distinct from the risk on the other items, so that what affects the risk on one item does not affect the risk on the others, the policy must be regarded as severable. Havens v. Home Ins. Co., 111 Ind. 90, 60 Am. Rep. 689, 12 N. E. 137; Phœnix Ins. Co. v. Pickel, 119 Ind. 155, 12 Am. St. Rep. 393, 21 N. E. 546; Pickel v. Phœnix Ins. Co., 119 Ind. 291, 21 N. E. 898; Worachek v. New Denmark, etc., Fire Ins. Co., 102 Wis. 88, 78 N. W. 411; Taylor v. Anchor Mut. Fire Ins. Co., 116 Iowa, 625, 93 Am. St. Rep. 261, 88 N. W. 807; Western Assurance Co. v. Stoddard, 88 Ala. 606, 7 South. 397; Republic Co., etc., Ins. Co. v. Johnson, 69 Kan. 146, 105 Am. St. Rep. 157, 76 Pac. 419; Hartshorne v. Agricultural Ins. Co., 50 N. J. L. 427, 14 Atl. 615; Boehm Lumber Co. v. Svea Ins. Co., 36 Wash. 520, 79 Pac. 34; Herzog v. Palatine Ins. Co., 36 Wash. 611, 79 Pac. 287; Ætna Ins. Co. v. Resh, 44 Mich. 55, 38 Am. Rep. 228, 6 N. W. 114; Phœnix Ins. Co. v. Public Parks Amusement Co., 63 Ark. 187, 37 S. W. 959; Baldwin v. Hartford Fire Ins. Co., 60 N. H. 422, 49 Am. Rep. 324.

"In our opinion the rule declared in the cases last cited is supported by reason and tends to produce a just result. Whether a contract is entire or severable is a question of intention, to be determined from the language employed by the parties, viewed in the light of the circumstances surrounding them at the time they contracted."

Second. "Where the warranty or condition which is broken does not affect the risk on certain items, the insurance should not be held to be ineffective as to those items. Such construction would subject the insured to a forfeiture for a cause which had no substantial relation to the interest of the insurer. The purpose of the warranties and conditions is to protect the insurer from liability on risks which he would have been unwilling to take for the stipulated premium, or perhaps for any premium. And if, as to any item, the breach of condition or warranty does not at all affect the risk, the release of the insurer from liability for that item may fairly be said not to have been within the reason of the condition or warranty, and hence not within the contemplation of the parties. For example, where a single policy insured, in separate amounts, two buildings situated upon farms several miles apart, the breach of a warranty of title as to one would not in the slightest degree increase the risk on the other, and the policy should be held severable."

The above rules laid down by Joyce are followed and supported by Ruling Case Law, vol. 14, p. 941.

It will be seen from above authorities, as well as the Texas cases, that a breach of this provision of the policy will avoid the whole policy, if its breach as to one item of the property affects, or may reasonably be supposed to affect, the other item by increasing the risk thereon.

Under above test we think this Home policy for $3,000 on the stock of merchandise necessarily increased the risk and hazard on the building, fixtures, and stock. In all reasonable probability the same fire would destroy the building and its entire contents. Certainly a conflagration that would destroy the stock would almost inevitably burn the fixtures and furniture in which the stock, in ordinary course, would have been deposited and situated. Any hazard affecting the stock necessarily affected the fixtures, and any temptation to burn the stock would have carried the fixtures with the other loss. The stock and fixtures would have burned together.

Not only so, but this defense was particularly material in the case at bar. The Providence-Washington Company in the policies it had issued to Boatner had fixed the limit of insurance it would permit on each and all items of the property. It had said he could not carry more than $8,250 on all the property. As a matter of fact, without permission from this company, and without its knowledge, he was carrying $11,250 on all the property. Had the Providence-Washington Company known of this, it might, and likely would, have canceled all of its policies. It would have had a right to do so. The accumulation of all this additional insurance might reasonably have led the company to believe that it was the part of wisdom to cancel the contracts, as it had a right to do. This provision in the policies reserves to the company the privilege of keeping advised of additional or overinsurance if its policies are to remain binding. This is but a natural and reasonable right. We know of no warranty more material to the company than the one against additional or overinsurance. There is nothing so conducive to fraud as to permit overinsurance. This company inserted in its policy a clear, valid, material, and reasonable provision in this respect. The contract was accepted by Boatner. It has been breached and its breach affected all the property insured. We cannot justify ourselves in depriving the company of its rights under this contract voluntarily assumed by the parties themselves.

[9] Counsel for plaintiff in error urge us to assess damages on the $1,000 recovery on the building policy. In making this request, they rely upon article 1627 of the Revised Statutes, which reads as follows:

"Whenever the Courts of Civil Appeals, on the trial of cases brought from an inferior court, shall affirm the judgment or decree of such inferior court, or when said courts shall proceed to render such judgment or decree as should have been rendered by the court below and such judgment shall be for the same or a greater amount, or of the same nature, as rendered in the court below, said courts shall render judgment against the appellant or plaintiff in error and his sureties on the appeal bond, a copy of which shall always accompany the transcript of the record; and said Courts of Civil Appeals shall in their discretion include in their said judgment or decree such damages, not exceeding ten per cent. on the amount of the original judgment, as the court may deem proper; and the judgment or decree of said courts rendered as contemplated in this article shall be final."

We think the Court of Civil Appeals properly disposed of this contention. At any rate, their action is final. We see no reason to hold that said court abused its discretion in refusing to award damages under the circumstances of this case.

It follows from what has been said that we think the Court of Civil Appeals has rendered the proper judgment in this case. Therefore we recommend its affirmance.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.