680 P.2d 1273

**Harvey L. STRUBE, Appellant,**

v.

**ARIZONA DEPARTMENT OF ECONOMIC SECURITY, an agency; Midland-Ross Corporation, Capitol Foundry Division, Appellees.**

**No. 1 CA–UB 346.**

Court of Appeals of Arizona, Division 1, Department D.

April 24, 1984.

---

Cox & Cox by Stephen L. Cox, Robert E. Yen, Phoenix, for appellant.

Robert K. Corbin, Atty. Gen. by Frank Sagarino, Asst. Atty. Gen., Phoenix, for appellees.

## OPINION

KLEINSCHMIDT, Judge.

Appellant-employee, Harvey L. Strube, contests a ruling of the Unemployment Insurance Appeals Board of the Arizona Department of Economic Security which denied him unemployment benefits. The board held that under A.R.S. § 23–775(4) appellant's unemployment was due "solely to a customary suspension of all operations, except maintenance work" so that he was disqualified by the terms of that statute from receiving benefits. We hold that the appeals board erred in finding that the employer's Chandler plant suspended all operations and, therefore, reverse its decision.

Appellant was a machinist working at Midland-Ross Corporation's Chandler foundry. The employer shut down most operations at the Chandler plant from June 30, 1982, through August 2, 1982. The purpose of the shutdown was to perform maintenance work and to enable employees to take vacations.

Prior to the shutdown the employer applied for and received an exemption of benefits for the shutdown period from the department of economic security on the ground that the suspension of operations was customary within the meaning of A.R.S. § 23–775. The employer informed the department that it intended to continue shipping operations during the shutdown as it had done during similar shutdowns in 1980 and 1981. The employer did ship finished products during the last three weeks of the 1982 shutdown.

The appellant applied for unemployment benefits for the period he did not work while the plant was shut down. Since appellant worked during a part of the time the plant was closed, benefits for only three weeks are at issue here. A departmental deputy for the department of economic security denied appellant's request for unemployment insurance benefits. The deputy found that appellant's unemployment was due to a customary suspension of operations and that he was, therefore, ineligible for benefits. The department's appeal tribunal reversed the deputy's decision. The tribunal found that the employer had not ceased all operations in the plant because it continued to ship finished products during a part of the time the plant was shut down. The appeals board thereafter reversed the tribunal and disallowed unemployment benefits for the period Strube was unemployed. This court has jurisdiction pursuant to A.R.S. § 41–1993.

Under Administrative Rule A.C.R.R. R6–3–50440(B)(2) "[w]orkers unemployed due to a temporary shutdown who meet eligibility requirements are entitled to unemployment benefits during the period of the shutdown except where the temporary unemployment is due to 'Customary suspension of operations' as described in A.R.S. § 23–775 Paragraph 4."

A.R.S. § 23–775 reads in part as follows:

An individual shall be disqualified for benefits:

\*    \*    \*    \*    \*    \*

4. For the week in which he becomes unemployed and for not more than the following three weeks, if his unemployment is due solely to a customary suspension of all operations, except maintenance work, at the factory, plant or other premises at which he was last employed, which will not occur more than once in a calendar year and will not exceed four consecutive weeks' duration, and that his employment will again be available to him upon resumption of operations. For purposes of this paragraph:

(a) "Customary suspension" means a suspension which has occurred for the same or similar reasons in each of three consecutive years or more, including the year in question, regardless of whether the suspension in any previous year would have satisfied the requirements of this paragraph. A suspension provided for by an agreement to which the employer is a party shall be considered customary unless the agreement specifies the exact time, duration, type and circumstances of the suspension. Any suspension whose details are determined by the employer shall be considered customary, regardless of the employer's ultimate reason for imposing it, as long as the employer's reason or reasons are the same or similar over the necessary period.

\* \* \* \* \* \*

(c) "Maintenance work" has its usual meaning and includes any administrative, executive, clerical, supervisory work or any other work necessary to keep the factory, plant or other premises in a position to resume full operations promptly at the end of the suspension or necessary to pay, supervise or otherwise support individuals performing such work.

Appellant challenges the board's decision on the ground that the employer did not cease all operations. At issue is whether shipping finished products is included in the statutory definition of "maintenance work." The employer contends that the

shipping was necessary to keep the plant "in a position to resume full operations at the end of the suspension" and therefore constituted "maintenance work." The appeals board agreed.

If the board's conclusions are sufficiently supported by the evidence this court will not disturb its decision on appeal. *Begay v. Arizona Department of Economic Security*, 128 Ariz. 407, 626 P.2d 137 (App. 1981). The employer failed, however, to establish that the shipping was necessary to keep the plant in a position to resume full operations at the end of the suspension. The employer submitted the affidavit of one of its employees, David Heler, which stated that the "shipping operations were essential in order to keep the plant in a position to resume full operations after the shutdown." This conclusory statement finds no support in any facts in the record. We can find nothing which suggests why the shipping was necessary to ready the plant for operation. Nor does any relationship between shipping finished products and the ability to resume full operation suggest itself to us.

The tribunal and the appeals board may admit evidence which possesses probative value commonly accepted by reasonably prudent people in the conduct of their affairs. A.R.S. § 23–674(C). Applying this standard we do not think the single conclusory statement to the effect that the shipping was necessary to keep the plant in a position to promptly resume full operations will suffice to support the board's finding. *See generally Begay v. Arizona Department of Economic Security, supra.*

Finally, we do not believe that the cases upon which the appeals board relied so heavily are controlling. Both *McKenzie v. Scottish Union & National Ins. Co.*, 112 Cal. 548, 44 P. 922 (1896) and *Brehm Lumber Co. v. Svea Ins. Co.*, 36 Wash. 520, 79 P. 34 (1905) held that the respective lumber operations involved were "shut down" when the plants were not running, even though they continued to ship finished

products. In those cases the courts were construing insurance policies that contained provisions to the effect that the policies were void if the business operations were "shut down" for more than a specified period without the consent of the insurer. Such clauses were included because the hazard of fire was increased when the boilers to work the fire fighting apparatus were left untended. The purpose of such clauses is so far removed from the scheme of the unemployment compensation statutes and the meaning of "maintenance work" as defined therein as to be inapposite.

We reverse the appeals board's decision. Appellant is entitled to three weeks of unemployment benefits.

HAIRE and OGG, JJ., concur.